IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LYNN M. JOHNSON, | ) | **FILED UNDER SEAL** |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:11cv02172-RLW |
| | ) | |
| v. | ) | |
| | ) | |
| BAE SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>DEFENDANTS' MOTION FOR SANCTIONS</u>

Defendants BAE Systems, Inc., and BAE Systems Information Solutions Inc. ("Defendants" or "BAE Systems"), by counsel and pursuant to the inherent power of this Court, move for sanctions based on Plaintiff Lynn Johnson's forgery and alteration of medical records offered in support of alleged emotional distress damages.

BAE Systems seeks exclusion of all evidence of and damages for Plaintiff's alleged mental health conditions and medical diagnoses or, following the conduct of an evidentiary hearing, other relief as the Court may deem appropriate. In further support of the instant Motion, Defendants respectfully refer the Court to the Memorandum of Points and Authorities in Support of Defendants' Motion for Sanctions and accompanying Exhibits attached hereto.

Pursuant to Local Rule 7(m), Defendants' counsel sent email correspondence to Plaintiff's counsel, Mr. Jordan, on July 19, 2013, outlining the basis for this Motion and requesting Plaintiff's consent to the relief requested herein. Counsel for both parties participated in a telephone conference on July 22, 2013 to further discuss each party's position on the instant Motion. Plaintiff does not consent to Defendants' Motion.

WHEREFORE, Defendants respectfully requests that this Court grant its Motion for

Sanctions, preclude Ms. Johnson's claim for emotional distress damages to the extent it is based

on her mental health diagnoses, and grant any other relief it deems appropriate.


Respectfully submitted,

SEYFARTH SHAW LLP

Dated: August 14, 2013                    By: _____

Raymond C. Baldwin (D.C. Bar No. 461514)
rbaldwin@seyfarth.com
Christine M. Costantino (D.C. Bar No. 984639)
ccostantino@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004-1454
(202) 463-2400 (telephone)
(202) 828-5393 (facsimile)

*Counsel for Defendant*

15994311v.1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of Defendants' Motion for Sanctions was served via hand delivery this ___14th___ day of August 2013, upon:

Harry J. Jordan, Esq.
Jordan and Associates
1101 17th Street, NW, Suite 609
Washington, DC  20006
hjlaw@msn.com
Counsel for Plaintiff

_____
Christine M. Costantino (D.C. Bar No. 984639)
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004-1454
(202) 463-2400 (telephone)
(202) 828-5393 (facsimile)
ccostantino@seyfarth.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LYNN M. JOHNSON, | ) | **FILED UNDER SEAL** |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:11cv02172-RLW |
| | ) | |
| v. | ) | |
| | ) | |
| BAE SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SANCTIONS**

Defendants BAE Systems, Inc., and BAE Systems Information Solutions Inc. ("Defendants" or "BAE Systems"), by counsel and pursuant to the inherent power of this Court, move for sanctions based on Plaintiff Lynn Johnson's forgery and alteration of medical records offered in support of alleged emotional distress damages.

BAE Systems seeks exclusion of all evidence of and damages for Plaintiff's alleged mental health conditions and medical diagnoses or, following the conduct of an evidentiary hearing, other relief as the Court may deem appropriate.

**INTRODUCTION**

Lynn Johnson ("Johnson") forged and altered her medical records in an attempt to deceive BAE Systems' expert regarding her mental health history, treatment and current condition. Johnson's sole claim for damages is emotional distress and her actions are part of a pattern of misconduct intended to deceive BAE Systems and, by extension, this Court, regarding her mental health history and treatment.

The record presents clear and convincing evidence that:

1

1.      Johnson forged and altered the medical records of one of her treating physicians,

Dr.

2.      Johnson gave the forged and altered documents to BAE Systems' psychiatric

expert, Dr. Siebert, attempting to deceive him regarding her mental health and history of mental

health treatment;

3.      Johnson lied to Dr. Siebert regarding her mental health history and condition;

4.      Johnson destroyed medical records in an effort to cover up her forgery and

alteration;

5.      Johnson misrepresented her mental health history to BAE Systems, numerous

health care providers, and the U.S. Government, in connection with her application for

deployment;

6.      Johnson concealed and continues to conceal the identity of her health care

providers; and

7.      Johnson lied under oath regarding issues pertaining to her mental health history,

records and related claim for damages.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff's Amended Complaint sets forth four causes of action: (1) Negligence, (2)

Sexual Battery, (3) Intentional Infliction of Emotional Distress and (4) Defamation. *See*

*generally* Docket No. 1.  Johnson, a U.S. government employee, alleges that a former BAE

Systems employee, Thomas Schiller, sexually assaulted her when he "grabbed and squeezed" her

buttocks.  Johnson alleges that Schiller's conduct caused her to experience "severe physical and

emotional health problems, " including "anxiety and depression."  Docket No. 1 at p. 35, ¶23.

15987085v.2

Johnson's expert report states that she suffered from Posttraumatic Stress Disorder and had a recurrence of Major Depressive Disorder related to her deployment to Iraq.  Exhibit A at p. 5.[1]

On May 15, 2013, Defendants' expert, Stephen Siebert, M.D., examined Johnson to address her claimed emotional and mental distress damages.  Exhibit I at ¶¶1-2. Johnson provided Dr. Siebert a copy of the medical records of                      M.D., Plaintiff's current psychiatrist.  *Id.* at ¶3.  Dr. Siebert reviewed and relied upon Dr.            records to obtain Johnson's complete psychiatric and treatment history, which he then would use in preparing his expert opinions on the nature, extent and cause of Johnson's claimed damages.  *See id.* at ¶11.

Six weeks later, Johnson's counsel Harry Jordan ("Jordan") provided an additional set of Dr.            records to defense counsel without explanation.  *See* Exhibit P.

Johnson was deposed on July 12-15, 2013, shortly after BAE Systems learned of the manufactured evidence.  Johnson admitted what she had done:

> Q:    *You originally altered these documents to deceive Dr. Siebert, right?*
>
> A:    *I - I did not want to disclose the*
>
> *                    * * **
>
> Q:    *On the original documents,*
>
> A:    *Yes sir.  I whited out the stuff about                      and I put*
>
> Q:    *And then you also circled            and wrote in        right?*
>
> A:    *Correct.*
>
> Q:    *And when you're doing this, you're actually forging Dr.            writing, right?*
>
> A:    *Yes, sir.  That's why I had to go to him and disclose what I did.*

---

[1] A complete Exhibit list with descriptions of each exhibit is provided as an Appendix to this Memorandum for the Court's ease of reference.

15987085v.2

* * *

> Q:   This [February 6, 2012 record], ma'am, you completely created it
>      yourself, didn't you?
>
> A:   Yes, I did.
>
> Q:   And you tried to pass it off to Dr. Siebert as having been prepared by Dr.
>      right?
>
> A:   I gave him the wrong set of documents, and it was wrong.

Exhibit J at 251-52, 257-58.[2]

### A.   Johnson Refused To Disclose Her Relevant Mental Health History, Including Treating Providers And Medical Records, In Her Discovery Responses.

BAE Systems served Interrogatories and Requests for Production on February 8, 2013.

Johnson responded on March 4, 2013.  *See* Exhibit B at p. 18.  Johnson objected to requests that

she identify health care providers and provide documents reflecting her medical history and

treatment.  Instead of providing the requested information, Johnson stated that she had "already

provided BAE Systems' counsel with [her] relevant medical records dealing with the physical

and mental distress that [she] experienced in Iraq and since [her] return." *Id.* at pp. 15-16.

Contrary to these representations, however, the 34 pages of "medical records" then produced

contained little to no information regarding Johnson's                or alleged mental

distress.[3]  In addition, the documents provided <u>no information whatsoever</u> regarding Johnson's

mental or physical health prior to or during her deployment to Iraq.

---

[2] This testimony reveals only a small portion of Johnson's alterations. *See* Section E, *infra* at p.
10.  And the falsification of these records represents only one of Johnson's numerous discovery
abuses.

[3] The "medical records" included two one page opinion letters from treating providers Dr.
                psychiatrist, and Dr.                a primary care provider.  No records were
included with these letters.  The produced documents also included records from primary care
provider                M.D.                                        CVS Prescription refill
forms                , and                                          records of

4

**B.**     **Johnson Failed To Supplement Or Correct Her Incomplete And Defective Discovery Responses Regarding Her Mental Health Despite Representations That She Would Do So.**

BAE Systems sent correspondence on April 4, 2013, advising Jordan that Dr. Siebert would conduct a medical examination of Johnson in early May 2013, and requesting that all of Johnson's medical records be produced in advance of the examination.  Exhibit D.

On April 18, 2013, Jordan responded that "additional medical records are being collected and hopefully will be in [BAE Systems'] hands by the end of the week."  Exhibit E.  BAE Systems sent correspondence to Jordan on April 25, 2013, noting that no additional documents had been received, despite the fact that "[Jordan's] correspondence of April 18, 2013, stated that [Johnson] was gathering additional medical records.  [Accordingly]…BAE Systems reserves the right to seek additional records after review of the supplemental materials."  Exhibit F at p. 3. Jordan forwarded minimal additional medical records to BAE Systems and again promised that "at this very moment [Johnson] is arranging to get all of her records from her treating physicians and hopes to have them available to you early next week."  Exhibit G.[4]

BAE Systems finally received some additional medical records from Jordan on or around the date of Johnson's medical examination on May 15, 2013.[5]  These documents included what purported to be Johnson's records of treatment with                        M.D., a pre-deployment

---

almost immediately following her August 28, 2012 deposition by Defense Intelligence Agency in a separate lawsuit.  Exhibit C  Thus, this selective production of records could not reflect Johnson's condition outside of, at most, almost a year following her deployment and well into her litigation.  *See id.*

[4] Although Exhibit F is dated before Exhibit D, BAE Systems received the April 24, 2013 correspondence in the mail after sending their April 25, 2013 correspondence via electronic mail. *See* Exhibit F and G.

[5] These records were mailed to BAE Systems' counsel without a cover letter and consequently the precise date of their production cannot be verified.  *See* Exhibit H at ¶¶1-2.

5

medical screening and an information sheet regarding the required pre- and post- deployment psychiatric screening required by DIA.[6]  Johnson provided the same version of "Dr.        .'s" records to Dr. Siebert at the time of the her medical examination. *Compare* Exhibit I at ¶¶3-4 *with* Exhibit H at ¶2; *see also* Exhibit J at 230-231.

### C.   Johnson Obstructed BAE Systems' Attempt To Obtain Additional Medical Records She Refused Or Neglected To Produce, And She Lied To Siebert.

At Dr. Siebert's May 15, 2013 examination of Johnson, it became apparent that Johnson had still not identified all of her treating providers or provided all of her relevant medical records.  Dr. Siebert identified additional medical records that needed to be obtained, including Johnson's                              records, her pre- and post-deployment psychiatric screening records, records from her deployment and the records of four additional medical providers:

Exhibit I at ¶¶6-8.

Johnson also lied to Dr. Siebert during the examination.  Exhibit I at ¶¶4-5.  Specifically, she advised him that she had never

*Id.* at ¶5.  She also concealed her                                                              *Id.* at ¶4.

Further, the

*Id.* at ¶6.

Dr. Siebert's inclusion of Ms.            on the list of unidentified providers was based on a reference to              in the plaintiff's expert report of Roger Rinn, M.D.  Exhibit I at ¶9; *see also* Exhibit A at p. 2.  Johnson did not independently disclose to Dr. Siebert the identity

---

[6] No actual records of Johnson's pre-and post-deployment psychiatric screening were included. Exhibit H at ¶2.

of Ms.            or the facility where she                                    . *See* Exhibit

I at ¶9; *but see* Exhibit J at 333-36.[7]

BAE Systems prepared an authorization listing the health care providers and entities from

which they were seeking the newly identified records ("Authorization").   BAE Systems listed

Ms.            at                                       on the Authorization.  *See*

Exhibit K.[8]   BAE Systems sent the Authorization to Jordan on May 24, 2013, and requested the

executed Authorization be returned on or before June 3, 2013, in consideration of the

approaching discovery deadline.  *Id.*  Johnson provided no response by that date.  *See* Exhibit L.

On June 4, 2013, BAE Systems wrote Jordan an email requesting immediate return of the

Authorization or, in the alternative, his availability for a conference call with the court regarding

this discovery dispute as required by the January 14, 2013 Scheduling Order.  Exhibit L.  Only

after that did BAE Systems receive an executed Authorization on June 7, 2013, which Johnson

significantly altered.  Exhibit M.

Despite altering the Authorization, Johnson did not, however, alert BAE Systems to the

fact that the release for medical records, specifically Ms.            's association with

---

[7] The inclusion of                is significant because Johnson testified that she discovered
that she provided fraudulent records to Dr. Siebert when she saw            's name on the
Authorization. Exhibit J at, e.g., 233-235.  On the second day of her deposition, Johnson stated
for the first time that she disclosed her treatment with            to Dr. Siebert and that
disclosure must have been the basis for Ms.            's inclusion in the Authorization.  Exhibit J
at 333-36.  Such an explanation strains credibility.  First, it was not offered during the first day of
deposition testimony despite extensive discussion of what Johnson provided to Dr. Siebert.
Second, if Johnson disclosed Ms.            , she would have presumably provided the correct
facility location            . This she apparently did not do. *See* Exhibit I at ¶ 8; *see also*
Exhibit K.

[8] The only information BAE Systems possessed regarding Johnson's treatment with Ms.
            was the passing reference in Dr. Rinn's report that Johnson had seen Ms.            at
an unidentified "local outpatient facility."  *See* Exhibit A at p. 2; *see also* Exhibit I at ¶8.  BAE
Systems searched for Ms.            on the internet and discovered a listing (apparently outdated)
for her  at            , the same facility as Dr.

was incorrect.[9]  *See* Exhibit M (executed affidavit).  BAE Systems only learned that Johnson had

actually received treatment from Ms.          at

through fortuitous circumstances.

As Johnson executed the Authorization with Ms. Bowman listed at          , BAE

Systems prepared a Subpoena and Notice of Deposition Duces Tecum and attempted to serve

Ms.          at that facility.  *See* Exhibit N.  An individual at          accepted service of the

subpoena to Ms.          .  Exhibit N.          forwarded the subpoena to Ms.          at

Defense counsel was contacted by counsel for Ms.          and          on June 20, 2013.  *See*

Exhibit H at ¶3.   This was the BAE Systems' first notice that Johnson received treatment at

        .  *See id.*

As summarized in BAE Systems' correspondence to Jordan, counsel for          advised

BAE Systems that he could not produce the medical records because Johnson instructed that she

did not want her records from          released.  *See* Exhibit O; *see also* Exhibit H at ¶ 4.  Johnson

then executed an authorization solely permitting a "summary letter" from three of her providers

to be released to her, after which she would provide her attorney a copy.  *See* Exhibit P.  BAE

Systems received yet another telephone call from counsel for          on June 24, 2013, stating that

the executed authorization was inadequate and requiring a proper authorization to be signed

before he could release any of the records.  *See* Exhibit H at ¶¶5-6; *see also* Exhibit Q.  Defense

counsel, Jordan and counsel for          then participated in a conference call on June 27, 2013,

---

[9]  Although Ms.          used to work at          , Johnson never          from Ms.
       at          (to BAE Systems' knowledge).   Rather, all of Johnson's treatment from Ms.
       occurred at          .  *See* Exhibit J at 233-234.
Yet, Johnson and her counsel never advised BAE Systems that they were seeking documents
from the incorrect entity.  Indeed, such a disclosure would contravene Johnson's efforts to
preclude BAE Systems from obtaining her relevant mental health information from, *inter alia,*
       .  *See id.*

15987085v.2

wherein counsel for          confirmed the inadequacy of the signed releases and offered to fill out a

proper authorization and have it waiting for Johnson to simply sign to ensure compliance.

Exhibit H at ¶7.

BAE Systems did not receive the medical records from          until July 1, 2013.  Exhibit

H at ¶8.  Johnson's          records revealed at least two additional treating providers,


*See generally* Exhibit R.  Johnson never previously

identified or disclosed either of those providers or any treatment at          

**D.    Johnson Forges And Alters Documents.**

On June 14, 2013, BAE Systems issued a Subpoena and Notice of Deposition for

, M.D.  *See* Exhibit S.  The Notice requested that Dr.          bring his original treatment

records to the deposition in Huntsville, Alabama.  *Id.*

Ten days after issuance of the Notice for Dr.          's deposition, Jordan wrote BAE

Systems addressing Plaintiff's outstanding discovery deficiencies.  *See* Exhibit P.  Jordan also

provided medical records from Dr.          with that letter.  *See id.*  Jordan did not, however,

offer any explanation for the inclusion of the records, and certainly did not disclose that Dr.

Siebert was operating with a forged set.  *See id.*  To the contrary, Jordan pressed BAE Systems

for prompt completion of Dr. Siebert's report with a thinly-veiled threat of filing a motion to

compel.  *See id.* at 4.[10]  At first glance, the newly-produced records merely appeared to be an un-

redacted copy of the records previously provided to BAE Systems and Dr. Siebert, with the sole

---

[10] This was the second time since his awareness of the forged records  that Jordan pressed BAE
Systems for completion of the report.  On June 10, after Johnson's testimony indicates he was
aware of the alterations to the records, Jordan sent email correspondence to BAE Systems
seeking Dr. Siebert's completed report. *See* Exhibit W; *see also* Exhibit J at 248 (confirming
Johnson told Jordan about the forged records in the beginning of June).

addition of a                                    *Compare* Exhibit I at ¶3 (Exhibit 1) *with* Exhibit P.

In preparation for the depositions of Dr.        on July 10, 2013 and Johnson on July 12, 2013,

however, BAE Systems uncovered the substantial discrepancies in the two sets of Dr.          's

records Johnson produced.   During Dr.          's deposition, BAE Systems received a copy of

his complete file.

### E.      Johnson Admits Forgery And Alteration.

During her deposition, Johnson admitted she forged her medical records and provided the

forged records to BAE Systems' expert Dr. Siebert at her May 15, 2013 medical examination.

Exhibit J at 258; *see also* Exhibit I at ¶¶2-3.  She also conceded that she made all of the

alterations, deletions and fraudulent entries in those records.  Exhibit J at 262-263.

The following chart summarizes Johnson's forgery and alteration for the Court's

review.[11]

| Authentic | Forged | Alteration |
|---|---|---|
| 7 | 4 | Johnson deleted '<br><br>          Exhibit J at 232-233. |
| 9 | 6 | Johnson deleted eight entries under<br><br>                                        Johnson replaced each of<br>these entries with<br><br>                    *See* Exhibit J at 243-244. |
| 8 | 5 | The substance of this **entire** record was erased and new entries were fraudulently made during this litigation. |

[11] The "Authentic" records are included in Plaintiff's Deposition Exhibit 10, which is part of Exhibit J to this Motion.  *See* Exhibit J at 232.  Plaintiff's Deposition Exhibit 10 is comprised of Jordan's June 24, 2013 correspondence and its attachments.  *Compare* Exhibit J at Pl. Dep. Ex. 10 *with* Exhibit P.  The "Forged" records are Plaintiff's Deposition Exhibit 9, which is part of Exhibit J to this Motion.  *See* Exhibit J at 230.  Plaintiff's Deposition Exhibit 9 is comprised of the records provided to Dr. Siebert and Defendants around May 15, 2013.  *Compare* Exhibit J at Pl. Dep. Ex. 9 *with* Exhibit I at ¶3 (Exhibit 1).  Defendants have provided page numbers in the top right corners of these records to assist in the Court's review.

| | | |
|---|---|---|
| | | She then added entries indicating that *See* Exhibit J at 237-241. |
| 10 | 7 | Johnson deleted the note and circled .[12] *See* Exhibit J at 245-246. |
| 11 | 8 | Johnson deleted . *See* Exhibit J at 249. |
| 12 | 9 | Johnson erased the entry Johnson deleted the entire entry under and subsequently wrote in that space.  She also created a new entry by circling *See* Exhibit J at 251-52. |
| 13 | 10 | Johnson deleted the entry that says and added |
| 14 | 11 | Johnson erased *See* Exhibit T at 44.  Johnson also wrote in the word ' |
| 15, 21, 24 | 12, 15, 17 | Johnson added |
| 17 | 30 | Johnson inserted the word |
| 18 | 31 | Johnson deleted the notation that says |
| 19 | -- | Johnson entirely removed the |

---

[12] Dr. testified that he completes the Exhibit T at 29-30.

15987085v.2

| -- | 13 | Johnson created a record stating and then forged Dr.           's initials. *See* Exhibit J at 257-258.[13] |
|---|---|---|
| 22 | -- | Johnson removed document from records. |
| 25 | -- | Johnson removed |
| 26 | 18 | Johnson removed |
| 27 | 19 | Johnson removed<br>Johnson also inserted<br><br>Finally, she wrote in<br><br>None of these entries exist on Dr.           's original record. |
| 28 | -- | Johnson removed a record |
| 29 | -- | Johnson removed a record |
| -- | 20 | Johnson completely manufactured this           record and forged Dr.           's initials. |
| 30 | 21 | Johnson removed Dr.           's note<br><br>She replaced that entry with<br>She also falsely indicated that Dr.<br>selected                                      Johnson then erased<br>                                                   and replaced<br>it with                      Last, Johnson filled in |

---

[13] Johnson's forged entry indicating that
reflects a calculated effort to conceal her other mental health treatment and records.  Johnson was

Exhibit R at         -015. Thus, in an effort to explain

                                                              , she created a whole new record regarding
                                                *See* Exhibit J at Pl. Dep. Ex. 9, p.
13.  This also suggests that Johnson had the         records in her possession to coordinate these
entries.

15987085v.2

**F.     Johnson And Her Counsel Failed To Disclose Johnson's Fraud Until Confronted During Her Deposition, Three Days Before The Close Of Fact Discovery.**

Johnson admits that she never advised BAE Systems or Dr. Siebert that she had provided forged records:

> Q:     *You never came clean and admitted that you forged documents, did you?*
>
> A:     *No, I didn't. I just turned the right ones in.*
>
> Q:     *And if I didn't raise it with you today, you were going to let it go, weren't you?*
>
> A:     *I didn't want to.*
>
> Q:     *Well, you never came forward, did you?*
>
> A:     *(No response.)*
>
> * * *
>
> Q:     *And in fact today, during your deposition, is the first time that you revealed to us that you forged these documents, right?*
>
> A:     *That's correct.*
>
> * * *
>
> Q:     *You never went to Dr. Siebert and said I've made a terrible mistake, I forged these documents, here are the correct ones, did you?*
>
> A:     *I didn't, no.*
>
> Q:     *Did you?*
>
> A:     *No.*
>
> Q:     *And you didn't do that with us, did you?*
>
> A:     *(No response.)*

Exhibit J at 237, 259, 239.   Johnson had no intention of advising BAE Systems of her deception. *Id.* at 237.   Rather, she merely provided new, unaltered records approximately six weeks later in the hopes her deceit would go unnoticed. *See id.* at 258-259.

Johnson advised her attorney in early June that she created an altered set of medical records and that she may have provided those records to Dr. Siebert. *See* Exhibit J at 247-248, 257.

> Q:   *When did you tell your attorney that you forged these records?*
>
> A:   *Beginning of June.*
>
> * * *
>
> Q:   *But as of June 24th, 2013, your attorney knew[14] that Dr. Siebert was operating with a forged set of documents, right?*
>
> A:   *I --*
>
> Q:   *Right?*
>
> A:   *I don't know --*
>
> Q:   *Well you told him that.*
>
> A:   **Yes, he knew on that day, he knew by then.**

Exhibit J at 248, 260 (emphasis added).[15]

Yet, Jordan likewise failed to disclose the fraud.  Instead, he simply provided a new copy of the records without disclosure. *See* Exhibit P.

---

[14] Jordan stated on the record during Johnson's deposition that he "did not know to what extent there had been any changes, and when I talked to my client, she indicated that I[sic] may have given the doctor the wrong set of records, but she didn't know." Exhibit J at 261.

[15] Johnson also claims that she advised Dr.         that she forged the records at the time she obtained a new copy. Exhibit J at 247-248, 253-254.  When asked during his deposition about any conversations with Johnson regarding the litigation, Dr.         did not appear to recall having this conversation. *See* Exhibit T at 10-12.

**G.     Johnson Continued Her Misrepresentations By Offering A False Reason For Forging Dr. Hayden's Medical Records.**

When confronted with the first alteration in her records -

- Johnson attempted to justify

her conduct by claiming she made the deletions to                    Exhibit J at 233-234

("Right, yep, you're right, I did, I deleted

These things

are not good and I thought that I could leave that information out.").  However, after

commencing a page-by-page review of the fraudulent entries, Johnson conceded that several of

the forged or deleted entries could not be explained by a desire to

> Q:     *Ma'am, you testified that the reason you deleted some of this stuff was to*
> *is that right?*
>
> A:     *Yes.*
>
> Q:     *But you also altered a number of entries relating solely to you, right?*
>
> A:     *Yes, sir. Now that I put things together, that is exactly what it looks like.*
>
> Q:     *So, by altering, for example,*
> *that doesn't                         in any way, does it.*
>
> A:     *No, it doesn't.*

Exhibit J at 249-250.  Johnson then admitted that she was deliberately seeking to conceal

from Dr. Siebert.  *See* Exhibit J at 251.  This testimony

evidences a continuing commitment to conceal information pertaining to her mental health

history and confirms her lack of candor in this litigation.

**H.     Johnson Attempted To Conceal Fraud By Destroying Records.**

After her examination by Dr. Siebert, Johnson then attempted to conceal her fraud by

destroying medical records.

> *Q:*   *So, you destroyed the records thinking they were the ones you'd altered; is that right?*
>
> *A:*   *I was thinking they were all of them.*
>
> *Q:*   *Because you didn't want anyone to find out you'd altered the records, right?*
>
> *A:*   *That is correct.*

Exhibit J at 255-256.

Johnson was apparently unaware that her counsel had provided the forged set to BAE Systems. *See* Exhibit H at ¶2.  BAE Systems has only Johnson's representation as to what records she actually destroyed.

## I.   Johnson Continuously Misrepresents Her Mental Health History.

Johnson lied on a pre-deployment medical screening questionnaire produced in this litigation.  Specifically, Johnson falsely answered

*See* Exhibit U; Exhibit J at 271, 276-278.  Johnson completed this form in June 2010, in hopes of deploying to Iraq.  There is no dispute that Johnson

*See* Exhibit J at Pl. Dep. Ex 10, p. 8 and Exhibit V at        006.  Nonetheless, Johnson denied on her application for deployment.

During this litigation, BAE Systems was advised that Johnson saw a primary care provider at

[16] *See* Exhibit P (executed Authorization).  Upon receipt of

records on July 31, 2013, BAE Systems learned for the first time that

Johnson                                                    *See* Exhibit V

at      006.  She in fact

*Id.* This is <u>again</u> new information, as even in Johnson's authentic

records from Dr.        she identified only                      more than a

decade earlier.  Exhibit J at Pl. Dep. Ex 10, p. 8.

Perhaps, more importantly, while these records reflect that Johnson

it does not indicate that

*See, e.g.,* Exhibit V at        -007.  Therefore, BAE Systems has no

information as to where Johnson was

as Johnson has not identified

[17]

In addition, despite testifying under oath that she

her medical records from Dr.        evidence

that she

*Compare* Exhibit J at 278, 331-32 *with* Exhibit J at Pl. Dep. Ex 10, p. 8 and Exhibit V at

006,      026.

## **LEGAL ARGUMENT**

---

[16] BAE Systems first learned of existence of this health care provider on June 24, 2013 when they received an executed authorization from Johnson along with Jordan's correspondence. *See* Exhibit P.

[17] Similarly, Johnson claims to be unable to remember the last name or the location of the physician who                              .  Exhibit J at 329.

Johnson's deliberate, bad-faith conduct cannot be ignored.  Her patent disregard for her discovery obligations and admitted fraud warrant the imposition of sanctions pursuant to the Court's inherent authority.  Preclusion of all evidence and damages related to her mental health diagnoses appropriately remedies the prejudice suffered by BAE Systems and provides the necessary deterrent for Johnson and future litigants, while still permitting the case to proceed on its merits.

## A.      Legal Standard For Imposing Sanctions Under Court's Inherent Power.

This Court has the inherent power to "protect [its] integrity and prevent abuses of the judicial process."  *See Shepherd, et al. v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).  This inherent power is not the creation of a rule or statute; rather it is derived from the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Atkins, et al. v. Fischer, et al.*, 232 F.R.D. 116, 127-28 (D.D.C. 2005).  The inherent power permits the Court to sanction attorney or party misconduct.  *Compton, et al. v. Alpha Kappa Alpha Sorority, Inc., et al.*, Civil Action No. 13-262 (RMC), 2013 U.S. Dist. LEXIS 52162 at *4 (D.D.C. Apr. 11, 2013).  The court can issue a variety of sanctions under its inherent power, including but not limited to fines, attorney's fees and expenses, disqualifications or suspension of counsel, preclusion of the admission of certain evidence or dismissal.  *Atkins*, 232 F.R.D. at 127-28.

"The evidentiary standard governing the use of a court's inherent power varies with the nature of the sanctions imposed."  *Compton*, 2013 U.S. Dist. LEXIS 52162 at *4-5.  A party seeking imposition of fundamentally penal sanctions (e.g., dismissal and default judgment, contempt orders, awards of attorney's fees, and the imposition of fines) pursuant to the Court's inherent powers must prove the opposing party's misconduct by clear and convincing evidence.

See *Shepherd*, 62 F.3d at 1477-78.  "The availability of issues-related sanctions sufficiently preserves the Court's power to guard against abuses of the judicial process in those instances where the abuse is not proven clearly and convincingly."  *Id.* at 1478.  These remedial "issue-related" sanctions (that do not preclude a trial on the merits) require proof only by a preponderance of the evidence.  *Compton*, 2013 U.S. Dist. LEXIS 52162 at *5.  In evaluating the implementation of sanctions, the Court may consider all the circumstances surrounding the alleged violation, even those outside the instant litigation.  *See Atkins,* 232 F.R.D. at 129 (citation omitted).

> **B.**     **Sanctions Are Required Based On The Clear And Convincing Evidence Of Johnson's Bad-Faith Conduct.**

Although BAE Systems' request for issue-related remedial sanctions requires a showing of misconduct by a preponderance of the evidence, the record provides clear and convincing evidence of bad-faith conduct on this issue in discovery sufficient to support even a purely penal sanction.

The most fundamental responsibility of a party engaged in litigation is "to provide honest, truthful answers in the first place and to supplement or correct a previous disclosure when a party learns that its earlier disclosure was incomplete or incorrect.  *Lebron v. Powell*, 217 F.R.D. 72, 76 (D.D.C. 2003).  "The Federal Rules of Civil Procedure is premised on the belief or, to be more accurate, requirement that parties who engage in it will truthfully answer their opponent's discovery requests and consistently correct and supplement their initial responses."  *Id.* at 78.  Here, Johnson failed at that most fundamental level.

Johnson did not provide the identity of any medical providers who treated her

in her discovery responses.  She also misleadingly advised BAE Systems she had provided all "relevant medical records."  Those

medical records, to the extent it was the complete production it purported to be, would falsely indicate that Johnson

Johnson then failed to appropriately supplement these deficient responses and production at any point in the litigation.  After her initial production, Johnson provided only two sets (including the forged documents) of medical records from Dr.          and two copies of her pre-deployment medical screening.  Johnson has since identified only one treating provider

in this litigation not previously found by BAE Systems.  That identification came on June 24, 2013 through an executed authorization, and even Johnson's authorization misrepresented the extent of

*Compare* Exhibit P *with* Exhibit V at          078 -          082


Johnson's failure to appropriately supplement her responses and candidly disclose her health care providers continues.  To date, Johnson has not provided and BAE Systems cannot identify the source of

*See, e.g.,* Exhibit V at          006

The record is clear that Johnson engaged in deliberate discovery abuses by her failure to truthfully and completely disclose discoverable information regarding her mental health damages.

Beyond the failure to comply with her basic discovery obligations, Johnson actively perpetrated a fraud on the Court and the parties in this litigation by creating and falsifying evidence:

- Johnson forged and altered the records of a medical doctor and produced them in an attempt to bolster her sole claim for damages in this case;

- Johnson lied to Dr. Siebert during her examination;

- Johnson destroyed documents in an attempt to conceal her fraud;

- Johnson did not provide accurate records until she was confronted with Dr.
  deposition notice and she never disclosed her forgery to BAE Systems
  until she was presented with both sets of documents at her deposition; and

- Johnson lied in her deposition about the reasons and circumstances for her forgery
  as well as

The record evidences persistent, bad-faith conduct in providing discovery regarding her

mental health history and diagnoses. "Litigating a case in federal court is a privilege that

requires conformance with the rules…[and] the pursuit of litigation positions with the utmost

good faith, even if those positions are self-interested o zealously advocated." *Slate v. American*

*Broadcasting Cos., Inc.*, Civil Action No. 09-1761, 2013 U.S. Dist. LEXIS 57617 at *73-74

(D.D.C. Apr. 23, 2013). Johnson's conduct makes clear that she does not respect the federal

judicial process, warranting the imposition of sanctions to correct her offenses and deter future

behavior of this nature. *See id.* Having established that sanctions should be entered on the

current record, the Court should determine the precise nature of those sanctions.

### C. Johnson Should Be Precluded From Introducing Evidence Or Claiming Damages Based On Her Mental Health Diagnoses.

In this case, BAE Systems recognizes that, despite Johnson's discovery conduct, her

discovery abuses and lies do not directly pertain to the issue of liability. Consequently, BAE

Systems seeks only to exclude her claim for emotional distress damages based on her mental

health records and diagnoses. BAE Systems' requested remedy is narrowly tailored to the

specific abuses described herein.

Lesser sanctions, such as monetary sanctions, do not provide an adequate deterrent to

avoid future bad-faith litigation practices. *Slate,* 2013 U.S. Dist. LEXIS 57617 at * 74 (citing

*Young v. Office of the United States Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C.

2003)("[t]o impose only a monetary sanction would be an open invitation to abuse of the judicial

15987085v.2

process.")  In addition, mere exclusion of the fabricated evidence fails to address the entire body of Johnson's misconduct and sends Johnson and other litigants the message that they have nothing to lose by creating evidence and seeing if they get caught.  *Slate*, 2013 U.S. Dist. LEXIS 57617 at *76 (citing *Pope v. fed. Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990), *partially vacated on other grounds*, 974 F.2d 982 (8th Cir. 1992)("Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.")).

Here, nothing short of issue-related exclusion of claims and evidence will remedy Johnson's conduct and address the prejudice to BAE Systems.  "The problem that arises when a party submits falsified or fabricated evidence is that it 'substantially prejudices an opposing party by casting doubt on the veracity of all the culpable party's submissions throughout litigation.'" *Slate*, 2013 U.S. Dist. LEXIS 57617 at *61 (quoting *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009)).  "The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate."  *Id.*  Issue-related sanctions, such as those sought here, may include adverse evidentiary rulings and preclusion of specific claims, defenses or evidence, and taking certain facts as established.  *Young,* 217 F.R.D. at 70("[F]or example, the Court in this case could bar plaintiff from introducing any evidence on her emotional disability claims because of her failure to provide medical records and cooperate in the independent medical examination.")(dismissing case for Plaintiff's discovery abuses and fabrication of medical evidence in support of a dispositive issue of her claim)

Johnson's creation and production of falsified medical records casts a doubt on all Johnson's disclosures and representations regarding her mental health history in this litigation.

Johnson also provided false information to Dr. Siebert during her examination. *See* Exhibit I at ¶¶4-6. Johnson lied on her pre-deployment medical screening that was produced in this case, further misleading not only the U.S. Government, but also BAE Systems regarding her mental health history. *See* Exhibit U. Finally, Johnson lied under oath at her deposition regarding the reasons for her forgery, the circumstances of producing forged records and the nature and extent of her history

This consistent submission of false or fabricated evidence prejudices BAE Systems' ability to verify Johnson's actual mental health conditions over time and prepare an adequate defense to her claim for emotional distress damages. BAE Systems has already exerted considerable effort to identify, locate and obtain information from Johnson's health care providers that should have been provided by Johnson herself in her discovery responses. Significant time has passed while BAE Systems struggled to obtain information that Johnson could have easily disclosed or provided in the first instance. *See, e.g.,* Exhibits O and Q (evidencing difficulty in obtaining medical records from Johnson's current treating providers at ). Moreover, the record is now replete with misrepresentations and inconsistencies that BAE Systems and their expert must attempt to verify if Johnson is permitted to maintain her damages claim based on her mental health diagnoses.

Further, Johnson's evasive and dishonest conduct confirm that a court order requiring disclosure and production of the information that has been sought throughout discovery is inadequate. It would leave the burden with BAE Systems to ensure Johnson provided accurate and thorough information. Thus, the appropriate remedy for this prejudice is the preclusion of Johnson's claim for emotional distress damages based on her mental health diagnoses, including exclusion of evidence of her medical records and testimony from any medical providers. *See*

*Parsi, et al. v. Daioleslam*, 286 F.R.D. 73, 77 (D.D.C. 2012) ("A court may impose issue-related sanctions whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue."(internal quotations and citations omitted))

If the Court were not inclined to impose such sanctions at this time, an evidentiary hearing should be held so that Johnson and potentially her counsel may provide testimony and evidence to resolve any outstanding issues the Court may need to address to impose the proper sanctions for the misconduct.

## CONCLUSION

For the foregoing reasons, BAE Systems respectfully requests that this Court grant its Motion for Sanctions, preclude Johnson's claim for emotional distress damages to the extent it is based on her mental health diagnoses, and grant any other relief it deems appropriate.

Respectfully submitted,

SEYFARTH SHAW LLP

Dated: August 14, 2013              By: _____

Raymond C. Baldwin (D.C. Bar No. 461514)
rbaldwin@seyfarth.com
Christine M. Costantino (D.C. Bar No. 984639)
ccostantino@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004-1454
(202) 463-2400 (telephone)
(202) 828-5393 (facsimile)

*Counsel for Defendant*

15987085v.2

## APPENDIX: Defendants' Exhibit List

| | |
|---|---|
| Exhibit A | Expert Report of Roger Rinn, M.D. |
| Exhibit B | Relevant Portions of Plaintiff's Responses to BAE Systems' Discovery Requests |
| Exhibit C | Plaintiff's Initial Production of Medical Records |
| Exhibit D | April 4, 2013 Correspondence from C. Costantino to H. Jordan |
| Exhibit E | April 18, 2013 Correspondence from H. Jordan to C. Costantino |
| Exhibit F | April 25, 2013 Correspondence from C. Costantino to H. Jordan |
| Exhibit G | April 24, 2013 Correspondence from H. Jordan to C. Costantino |
| Exhibit H | Declaration of Christine Costantino, Esq. |
| Exhibit I | Declaration of Stephen Siebert, M.D. and Exhibits thereto |
| Exhibit J | Relevant Portions of the July 12-15, 2013 Deposition Transcript of L. Johnson (including Plaintiff's Deposition Exhibit 9 and 10) |
| Exhibit K | May 24, 2013 Correspondence from C. Costantino to H. Jordan and attachments |
| Exhibit L | June 4, 2013 Email from C. Costantino to H. Jordan |
| Exhibit M | June 7, 2013 Email from H. Jordan to C. Costantino with Executed Authorization |
| Exhibit N | Affidavit of June 19, 2013 Service on |
| Exhibit O | June 21, 2013 Correspondence from C. Costantino to H. Jordan |
| Exhibit P | June 24, 2013 Correspondence and Attachments from H. Jordan to C. Costantino |
| Exhibit Q | June 24, 2013  Email correspondence from C. Costantino to H. Jordan |
| Exhibit R | Records for L. Johnson |
| Exhibit S | June 14, 2013 Subpoena and Notice of Deposition for                    M.D. |
| Exhibit T | Relevant Portions of July 10, 2013 Deposition Transcript of |
| Exhibit U | Relevant Portions of Pre-Deployment Medical Screening of L. Johnson |
| Exhibit V | Relevant Portions of                    Records for L. Johnson |
| Exhibit W | June 10, 2013 Email Correspondence from H. Jordan to C. Costantino |

15987085v.2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LYNN M. JOHNSON,                          )
                                          )
      Plaintiff,                       )          Civil Action No. 1:11cv02172-RLW
                                          )
     v.                                   )
                                          )
BAE SYSTEMS, INC., et al.,                )
                                          )
      Defendants.                      )
_____   )

## <u>ORDER</u>

Upon consideration of Defendants' Motion For Sanctions, any Opposition thereto, and the entire record herein it is, this _____ day of _____ 2013, be and hereby is ORDERED, that Defendants' Motion is granted, and it is further

ORDERED that all evidence of and damages for Plaintiff Lynn Johnson's mental health conditions and medical diagnoses shall be excluded from any trial in this matter.

So Ordered.


Date: _____

                                      _____
                                        The Honorable Robert L. Wilkins
                                        U.S. District Court Judge

1