Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNN M. JOHNSON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BAE SYSTEMS, INC., et al., )<br>)<br>    Defendants. )<br>_____) | Civil Action No. 1:11cv02172-RLW |

**PLAINTIFF'S MOTION FOR ACCEPTANCE AND
CONSIDERATION BY THE COURT OF LATE-DISCOVERED
EVIDENCE OF FRAUD, CORRUPTION, AND CRIMINAL
<u>MISCONDUCT INVOLVING CRITICAL EVIDENCE</u>**

Plaintiff, Lynn M. Johnson (Johnson), by and through her undersigned counsel, moves this court, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, and under the court's inherent authority to protect its docket from fraud, contamination of evidence, and criminal conduct, and its related obligation to safeguard the judicial process from such activities, to accept for filing and consideration, the following recently-discovered proof showing that evidence has been compromised concerning dispositive issues involved in this litigation, and in support thereof states the following. Plaintiff also seeks appropriate sanctions.

<u>**BACKGROUND**</u>

Johnson's service in Iraq as an Analyst for the Defense Intelligence Agency (DIA) resulted in this lawsuit against BAE, the employer of Thomas Schiller (Schiller), Johnson's supervisor in Iraq, seeking damages under District of Columbia common law for emotional distress, negligent supervision, and defamation, and a separate proceeding under Title VII of the Civil

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 2 of 15

Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., against DIA for damages resulting from sexual harassment and retaliation. [1] Among other things, Johnson seeks damages, in both proceedings, for emotional distress, resulting from being sexually assaulted and continuously harassed by Schiller while she was deployed in Iraq.  Pending before the court is BAE's motion for summary judgment, to which Johnson has responded, and various other motions for sanctions by the parties.

## FOIA REQUESTS FROM DIA

After investigating Johnson's charges, DIA's EEO Office issued a formal "Report of Investigation" (ROI).  A copy was provided Johnson, who in turn sent a copy to BAE in response to its discovery requests in this action.  The ROI did not include Johnson's complete personnel file.

Johnson's pre-deployment medical records are of critical importance in this litigation because BAE claims that she was suffering from emotional distress and other problems before she was sent to Iraq, failed to fully reveal such information to the medical officers who examined and cleared her for deployment,  and consequently, her case should be dismissed.

Johnson denied she had lied and readily agreed to the release her pre-deployment medical records, knowing that they would show she had been open and truthful regarding her mental health and that they would show that Dr. Matthew Ubben,[2] DIA's Chief Psychiatrist, had examined and cleared her for deployment.  So when BAE, in April, 2013, indicated that it

---

[1] Johnson v. DIA, Case No. 570-2012-00271X, Agency Case No. DIA-2011-00031.
[2] As for as Johnson and her counsel know, BAE never interviewed, or sought to interview Dr. Ubben, or to subpoena him  to testify what was, or was not,  in his pre-deployment mental health evaluation of Johnson.

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 3 of 15

intended to subpoena her medical records, among others, Johnson didn't hesitate to consent to their release. (Exh. A, p. 2)   But BAE didn't subpoena the records.  On June 3, 2013, Johnson executed a second consent to the release of her medical records from DIA, DOD, and the U.S. Army.[3]  BAE either knew, or suspected, that the records may contain just what Johnson said they did and feared the release of documents would severely damage its defense.  Its strategy became to continue to accuse Johnson of not providing her medical records and of lying about her medical condition prior to deployment. (Johnson's DIA records solely belonged to the agency, Johnson never received a copy.) Accordingly, on July 8, 2013, Johnson filed a FOIA request and Privacy Act Request with DIA for the release of her entire personnel record, including her complete pre-deployment files, so that she could provide them to BAE and the court to show that she was being truthful. (Exh. B, pp. 4-6)

   Over the next 11 months, Johnson frequently inquired as to the status of her FOIA request; the FOIA office's response was always the same: it was swamped with requests, it would get to it as soon as it could, and it was sorry for the delay. (Exh. C, pp. 8-9) But as Johnson was to discover the delay was not because of the volume of requests, but because of fraud, under-handedness , and collusion on the part of Raymond Baldwin, BAE's counsel, William A. Horrigan, DIA Assistant General Counsel, who was assigned to the EEO proceeding by the agency, and the EEO and FIOA offices to block or otherwise interfere with the production of such records.

---

[3] Actually, the consent extended to the release of all medical records from 10 additional medical health providers.

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 4 of 15

On May 8, 2014, Ms. Alesia Y. Williams, Chief FOIA Staff, finally responded to Johnson's document release request, stating that a search of DIA's records located 11 documents (11 pages) relating to Ms. Johnson's personnel files, 34 documents (50 pages) relating to her deployment records, and 14 documents (37) pages relating to the DIA Inspector General (IG) investigation.  One document (11 pages), without any explanation of what it is, was said to have been referred to another unidentified government agency for its review and response to Ms. Johnson's request.  (Exh. D, pp. 11-12) (The DIA deployment checklist shows the generation of hundreds of pages of records, two of which confirmed that Dr. Ubben had indeed given Johnson her pre-deployment psychological screening.) All psychological evaluation documents were withheld, despite Johnson's consent to their release.

The DIA IG Report, regarding Johnson's complaint of retaliation by the agency, and a "miscellaneous" pre-deployment form asking what counseling Ms. Johnson may have had during the prior 12 months, a total of 26 pages, were provided to Johnson.  Sixty pages of pre-deployment records: payroll information, firearms qualifications, inoculations, travel vouchers, and other routine data, were provided Baldwin.  Citing 10 U.S.C. §424(a) and 5 U.S.C. §552(b), Ms. Williams refused to release any other documents, claiming they involved DIA's internal rules and practices, an on-going EEOC investigation, or would reveal DIA employee identities, its organizational structure, and DIA's function.  Johnson filed an appeal of Ms. Williams's action on June 27, 2014.

Investigation determined that there was more involved in the failure to release records than a staff misreading of statutory language as to what could or could not be released,

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 5 of 15

particularly with respect to Johnson's pre-deployment medical records. What was uncovered was irrefutable evidence of fraud, collusion, and other misconduct involving the FIOA office, Horrigan, Baldwin, among others, in violation of 29 C.F.R. §1614, FOIA rules and regulations and criminal law. As a result, and as demonstrated below, the record has been corrupted, the court has been duped, and this lawsuit compromised, and unless the court acts to sanction those involved, the integrity of the judicial system will be tarnished.

## ROLE OF THE OFFICE OF GENERAL COUNSEL IN EEOC INVESTIGATIONS

Heads of agencies must not permit intrusion on the investigations and deliberations of EEO complaints by agency representatives and offices responsible for defending the agency against EEO complaints. Maintaining distance between the fact-finding and defensive functions of the agency, enhances the credibility of the EEO office and the integrity of the EEO complaints process. Legal sufficiency review of EEO matters must be handled by a functional unit that is separate and apart from that which handles agency representation in EEO complaints. DIA requires this separation because of impartiality, and the appearance of impartiality is important to the credibility of the equal employment program. EEO MD-110, Chap. I, §III. (Nov. 9, 1999).

The EEO office is also responsible for the neutral counseling and investigation of an EEO complaint, and for developing an impartial and appropriate factual record from which a decision-maker can render a decision on the discrimination allegations. Once the process becomes adversarial, i.e., once a request for a hearing is submitted or an appeal is filed with the Commission, an agency's General Counsel, or other designated legal representative, has a duty

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 6 of 15

to represent the interest of the agency. During the informal counseling stage and the investigation into the accepted issues of the complaint, however, it is settled that the agency representative shall not have a role in shaping the testimony of the witnesses or the evidence gathered by the EEO Investigator. (Exh. E, ***Woods v. Chuck Hagel, Secretary, Department of Defense (Defense Intelligence Agency)*** Appeal No. 0120084008, Hearing No. 420-2007-00107X, Agency No. DIA-00006-2006 (formerly 06-DI-03), decided June 6, 2014, (Exh. E, pp. 26-28; see also, ***Rucker v. Department of the Treasury***, EEOC Appeal No. 0120082225 (February 4, 2011) request for reconsideration denied) EEOC Request No. 0520110343 (April 26, 2011).

If any doubt existed regarding the role of DIA's Office of the General Counsel in discrimination investigation proceedings, it was put to rest by the June 1, 2001, response of R. Edison Elkins, Director, Federal Section Programs, Office of Federal Operations, to Neely Moody, Chief, Diversity Management and Equal Opportunity, Defense Intelligence Agency. Mr. Elkins stated without reservation that 29 C.F.C. § 1614.108(b) requires that agencies develop an "impartial factual record" upon which to make findings on the claims raised in the written complaint, and for this reason the complaint investigator must be neutral in his/her development of a factual complaint record. Mr. Elkins went on to say that the investigator must maintain the appearance of being unbiased, objective, and thorough, and the process must actually be non-adversarial. Accordingly, it is inappropriate, stated Mr. Elkins, for an agency representative to be present during any face-to-face interview with management officials. (Exh. F, pp. 34-38)

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 7 of 15

Mr. Elkins's letter went on to state that it would be even more inappropriate for an agency representative to speak to management witnesses concerning their testimony prior to or during the investigation.  At a minimum such contact would give the appearance that the agency's representative was "coaching" the witness on what to say and what not to say.  In addition, any suggestions or comments by an agency representative to any potential witness in an EEO complaint investigation, regarding their testimony or what may or may not be unlawful employment discrimination, may serve to obstruct or, at a minimum appear to impede, an investigator's efforts to obtain truthful testimony from the witness. *Id.* at 35.

## FRAUD, DECEIT, AND COLLUSION IN VIOLATION OF 29 C.F.C. § 1614.108(b)

Horrigan was the General Counsel's representative in ***Woods v. Hagel***, *supra*, and severely criticized, chastised, and sanctioned for his actions in that case and as he should be here. DIA's EEO office was also involved in the ***Woods*** case and was sanction.  Horrigan either never learned his lesson, or believes he is above the law, for again with the cooperation and assistance of DIA's EEO office, and apparently the FOIA staff, he impermissibly interfered in the development of an impartial factual record in Johnson's EEOC case, and with Baldwin corrupted the related BAE litigation, precluding a fair and proper evaluation of Johnson's claims in either jurisdiction.

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 8 of 15

The attached emails, and other documents, only recently turned over to Johnson, show conclusively that Horrigan was permitted to question witnesses prior to their investigative interviews and to coach, prep, and coerce witnesses into testifying falsely that Johnson's claims had no basis in fact, that she encouraged the conduct she complains of, or to say that they had no knowledge of anything that happened, when the evidence is clearly to the contrary, or to swear under oath that Johnson was a liar, just incompetent, and was playing the "girl card" in the hope of a financial windfall.

As just one example of Horrigan and the EEO office joining forces to interfere with the development of an impartial record is the evidence relating to Wendy Hart, the Analyst that Johnson replaced in Iraq, and a major witness as to the gender harassment in that workplace. On August 31, 2011, Hart received an email from Jillian Carilli, EEO Case Manager, directing Ms. Hart, in bold letters at the bottom of page 2, to contact Horrigan for a meeting **PRIOR TO YOUR TESTIMONY**. (Exh. G, pp. 40-42) A series of emails ensued between Horrigan and Hart eventually setting up a time on September 16, 2011, for her to speak with him. On page 2 of Horrigan's first email to Hart, Horrigan states that, as part of his job he must speak to her <u>before her testimony</u> to make sure the "record is complete." And to that end, he would like to speak to her about her testimony prior to the investigation. " (*Id*., at 43-52) In view of Ms. Carilli's email to Ms. Hart, and her contact by Horrigan, it is reasonable to expect that the other witness named by Johnson in her complaint were similarly contacted and interviewed by

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 9 of 15

Horrigan during the course of the investigation, [4] especially considering the contradictory testimony they ultimately provided to the investigator.

Moreover, DIA EEO Investigator Alethea Thompson, who was supposed to be impartial according to federal law and EEOC directives, allowed Horrigan to sit in on depositions taken in the Johnson investigation, while omitting his attendance from the deposition transcripts. Discussions were noted off the record but the parties involved were not identified. In the case of the deposition of Patricia Brown, a major witness for Johnson, Horrigan tried to contradict her about dates Johnson complained about harassment by Schiller. Emails to Pat Brown from Johnson reflecting her complaints of harassment and hostile work place environment were edited by Horrigan; the originals never released, even though they were demanded in discovery. Johnson requested, throughout the discovery phase of her case with the EEOC, the same deployment records that both DIA and BAE seek to suppress and her he requests were routinely denied. Other document requests were refused; answers to interrogatories were incomplete and not signed by the DIA person responding. (Horrigan said it was unnecessary for anyone to vouch for the truthfulness and accuracy of the responses, his signature was all that was needed, an issue that remains pending before the EEOC Administrative Judge.)

Not only did Horrigan improperly participate in the depositions of Hart and Brown, and most certainly others, he attended Johnson's deposition, with the apparent blessing of the investigator. If his purpose was to intimidate and scare Johnson he succeeded; for he stared at

---

[4] Richard Cappelli, DIA; Patricia Brown, DIA; Joseph Gigliotti, DIA; LTC Robert T. Phillips, US Military; Rachel Allen, DIA-BAE; Jason Ranone, DIA.

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 10 of 15

Johnson with a sullen, displeased, and angry expression on his face, and when he didn't like one area of inquiry, he abruptly stood up, threw his pencil down on the table, and stormed out of the room.  One can only imagine how other witnesses may have been treated.

## **DENIAL REASONABLE TIME TO REBUT ROI TESTIMONY**

Under 29 C.F.R. §605(b), a complainant shall have a reasonable amount of official time to prepare the complaint and to respond to agency and EEOC requests for information. This did not occur in this instance.  The ROI was rushed and evidence contrary to Johnson's charges was routinely accepted without a reasonable opportunity for rebuttal by Johnson.

That Horrigan's tactics, directly intervening with witness preparation and testimony and, more subtly, behind the scene, were effective is clear from the resulting tainted ROI.  Again the investigator, who was supposed to be impartial, provided Johnson with the transcript of only two of the witnesses (Gigliotti and Cappelli);  she said the other transcripts were of no significance, which was not true.  Johnson was entitled to and had requested the transcript of the testimony of all witnesses who testified. The investigator finally turned over, under separate cover, the testimony of one additional witness, LTC Robert T. Phillips.  Johnson was not allowed to provide rebuttal evidence to 60% of the witness testimony set forth in the ROI. And after the ROI was released, and Johnson asked again for fair and reasonable rebuttal time, she was given hardly enough time to do so, but did what she could.   Furthermore, when Johnson's counsel received the ROI (over 1,000 pages) her rebuttal was not included or even forwarded to the EEOC, as evidenced by Carilli's transmittal letter.  The bottom line is that the ROI, which Horrigan relies upon to defend DIA against Johnson's discrimination and retaliation

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 11 of 15

claims, was manufactured at his direction and tainted with fraud, to protect DIA—the exact same documents and other evidence being used by Baldwin in this litigation to mount a defense against Johnson's claims.

### BALDWIN AND HORRIGAN TEAM UP TO BLOCK EVIDENCE

BAE's counsel and Horrigan clearly have a common interest in discrediting Johnson's claims of sexual harassment, assault, and retaliation; they joined forces for this purpose by, among other things, interfering with the release of critical medical health evidence regarding Johnson's pre-deployment. Unfortunately for them, they left a paper trail of what they did.

Baldwin denied that he had any contact with Horrigan regarding Johnson's lawsuit or the release of her personnel records. Evidence is to the contrary. On September 25, 2013, Horrigan sent Baldwin this e-mail:

"Ray, in response to your email earlier today, I'm forwarding the email string. This office has considered whether this email is subject in any way to the Privacy Act, and we concluded that it is not. I do not know if this is relevant, but it clearly pertains to the motion for sanctions that BAE has pending."  "**For obvious reasons, I have deleted that portion of the chain and all after.** The attachments come, to my understanding from Ms. Johnson. I do not have any clear understanding of what it is or whether it is authentic. "(Emphasis added) (Exh. H, pp. 53-55)[5]

This was not the only effort of Horrigan to assist BAE in the defense of its lawsuit: he interfered with Johnson's requests for pre-deployment records prior to the September 30, 2013 hearing, directing that any requests for Johnson's records would only be handled by a FOIA

---

[5] Baldwin submitted this email from Horrigan into the record as an exhibit during the September 30, 2013 hearing. Horrigan admitted in the email that he tampered with it by deleting parts, yet Baldwin introduced it as evidence despite Horrigan's admissions. Moreover, Horrigan addresses Baldwin very informally and references emails Baldwin sent him previously. These emails were never turned over during discovery to Johnson's counsel, as requested.

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 12 of 15

request and those requests should be forwarded to him, rather than the FIOA officer normally charged with such matters, stating he would be "happy" to receive such request--I am sure he was. (Exh. I, p. 60)

As an aside, to appreciate the importance of the tampered evidence in this litigation, Dr. Stephen Siebert, BAE's psychiatric expert, qualified his evaluation of Johnson because he had not seen her DIA pre-deployment psychiatric records. He suggested that his opinion, which was not favorable, could change if he were permitted to see such reports. Baldwin and Horrigan were determined that this did not happen. It makes sense that if Johnson's pre-deployment records were as devastating to Johnson's medical damage claims as Baldwin and Horrigan allege, they would have jumped at the opportunity to make them available and would have been knocking on the courtroom door for an order requiring that they be provided. The doctrine of spoliation, which Baldwin is fond of citing, surely comes into play: if Baldwin and Horrigan are blocking such evidence, the inference is that such evidence must be, and seriously so in the facts here, contrary to the interest of BAE and DIA.

Baldwin was not the only person at Seyfarth Shaw that personally became involved in the processing of Johnson's FOIA requests, his co-counsel monitored the progress of such requests at the FOIA office. If Baldwin or his co-counsel were just seeking status information, why didn't they simply contact Johnson's counsel for updates? After all, the FOIA requests were submitted by Johnson, not BAE's

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 13 of 15

**RELIEF**

Under 29 C.F.R. § 1614, and related rules and regulations, DIA's EEO office was responsible for the neutral counseling and investigation of Johnson's EEO complaint and for developing an impartial and appropriate factual record from which a decision-maker could render a decision on the allegations of the complaint. During the informal state and the investigation of the claims, DIA's General Counsel's office could have no role in shaping the testimony of the witnesses or the evidence gathered by the EEO Investigator. Here, DIA's EEO office and Horrigan evidenced apparent disdain and contempt for such requirements, with the result that the investigator's report is corrupted by fraud, false evidence, selective release of DIA documents, and other unlawful activities of such severity as to require a criminal investigation. Since this same ROI is the central piece of evidence in this litigation, the court cannot permit such tainted evidence to be considered here and has an obligation to see that those involved, especially counsel, as officers of the court, are held accountable for their involvement, whether active or passive.

As to what may be appropriate sanctions, the EEOC's action in the *Wood* case is instructive. It found that DIA had failed to comply with either the spirit or the letter of the specific provisions contained in 29 C.F.R. Part 1614, and related rules and regulations, that such conduct was inexplicable and inexcusable, and imposed harsh sanctions on the parties. (Exh. pp. 28-29) Here, the evidence of fraud and unlawfulness is no less egregious. Accordingly, the court is urged to give consideration to the following suggested sanctions:

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 14 of 15

1.	BAE's motion for summary judgment be denied since factually based on a corrupted EEO Report of Investigation, fraud, unethical conduct, and criminal activities that preclude a finding that Johnson's has failed to establish a prima facie case for the relief sought in this suit.

2.	Judgment be entered for Johnson against BAE as a sanction for its counsel filing false and fraudulent evidence with this court as truthful, accurate, and above reproach, when its counsel knew, or should have known, it was false, tainted, inaccurate, and that other critical evidence bearing on Johnson's ability to present her claims in accordance with procedural due process had been suppressed.

3.	Within sixty days of the date hereof, Johnson shall submit to the court a statement, with supporting evidence, of the amount of compensatory damages she believes she is entitled for the emotional distress, resulting from her sexual harassment and assault, and defamation, as well as the loss of salary, benefits, and promotions, and other damages that Johnson believes she is entitled, including reasonable legal expenses.

4.	Johnson's counsel is awarded reasonable attorney's fees incurred in processing her lawsuit; they shall be paid by BAE.  A verified statement of such fees shall be submitted to the court within 30 calendar days of this decision being final.

5.	The court, in view of the seriousness of the crimination activities revealed in this action, including the violation of Johnson's civil rights, intends to bring this matter to the Department of Justice for appropriate action.  Similarly, the matter shall be brought to the attention of the DC Committee on Grievances.

Case 1:11-CV-02172-RWL Document 78, Filed 7/3/14 Page 15 of 15

6.	The court may impose additional penalties and sanctions, including punitive damages if appropriate, depending what further evidence develops in this action.

>Respectfully submitted,
>
>/s/Harry J. Jordan
>Harry J. Jordan, Esq.
>1101 17th Street, NW, Suite 609
>Washington, DC 20036-4718
>(202) 416-0216
>hjjlaw@msn.com
>
>Plaintiff's Counsel

July 3, 2014

### CERTIFICATE OF SERVICE

I hereby certify that this motion, with all attachments, was filed by electronic mail with the clerk of this court, on this 3rd day of July, 2014.

>/s/Harry J. Jordan, Esq.

### Rule LCvR 7(m) Notice

I hereby certify that notice of the intent to filed the instance motion was served by email this 3rd day of July, 2014, on Richard Baldwin.  Mr. Baldwin responded, but failed to consent to the motion.  There was no reason to expect, in any event, that he or his client would agree to the relief sought.

>/s/ Harry J. Jordan, Esq.

# APPENDIX