# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LYNN M. JOHNSON,** | |
| Plaintiff, | |
| v. | Civil Action No. 11-cv-02172 (RLW) |
| **BAE SYSTEMS, INC.,** *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendants' Motion for Summary Judgment, Defendants' Motion for Sanctions, and the associated oppositions and replies. Defendants argue that no reasonable jury could find in favor of Plaintiff on any of her claims. The Court agrees with respect to Plaintiff's claims for negligence, battery, and defamation, and grants summary judgment to the Defendants on those claims. Plaintiff's claim for intentional infliction of emotional distress survives.

Defendants also allege that Plaintiff has repeatedly abused the litigation process, and ask that this Court impose the sanction of dismissal pursuant to its inherent power. After hearing argument from both parties, as well as testimony from the Plaintiff and other witnesses, the Court finds by clear and convincing evidence that the Plaintiff destroyed, attempted to destroy, or caused to be destroyed potentially relevant evidence for the second time during the course of this litigation. Although Plaintiff's actions are inexcusable and demonstrate a severe lack of respect for this Court and for the litigation process generally, the Court does not believe that the ultimate sanction of dismissal is warranted. The Court will instead impose lesser, but nonetheless severe, sanctions.

# I.    BACKGROUND

The basic facts of this case are by now well-known to the Court.  Between December 2010 and June 2011, Defense Intelligence Agency employee Lynn Johnson was deployed to Iraq and assigned to the Analysis & Production Unit in the Joint Intelligence Operations Threat Center on the Al Qaeda in Iraq team ("AQI Team").  *See* Defendant's Response to Plaintiff's Amended Statement of Material Facts in Dispute ("Def.'s Resp.") ¶ 1.2 (Dkt. No. 85).[1]  The AQI Team was under military command and tasked with supplying operational intelligence to aid in military operations.  *Id.* at ¶ 1.9-11.With her on the team was Thomas Schiller, a BAE Systems employee working on a BAE contract with the DIA.  *Id.* at ¶ 1.14.  Mr. Schiller was tasked with training Ms. Johnson; this task included reviewing and editing her work.  *Id.* at ¶ 1.19-20.

During the months they worked together, Mr. Schiller made several comments of a sexual nature to Ms. Johnson.  These included comparing her physical attributes to those of his wife, telling her he was "so horny [he] could screw the crack of dawn," and suggesting that Mr. Schiller and Ms. Johnson should pretend to be a couple.  *Id.* at ¶ 2.10.  On one occasion, he smacked or grabbed her buttocks while exiting the dining hall.  *Id.* at ¶ 1.31-33.  Ms. Johnson reported Mr. Schiller's behavior to senior military personnel during a conversation on February 13, 2011.  *Id.* at ¶ 1.73.  She filed formal charges with the Department of the Army shortly thereafter; the Army investigated and determined that Mr. Schiller had engaged in wrongful sexual conduct in violation of the U.S. Military Justice Act.   Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("SJ Opp.") Exh. 60 (Dkt. No. 72).  Other than in the context of litigation, Mr. Schiller and Ms. Johnson have had no contact since February 13,

---

[1] Plaintiff's Amended Statement of Material Facts is divided into two sections; the first responds to BAE's assertions, the second presents a narrative.  Paragraph 1.2 refers to the second paragraph of the first section; ¶ 2.3 would refer to the third paragraph of the second section. Defendant's Response follows the same format.

2011.  Plaintiff's Amended Statement of Material Facts in Dispute ("Pl.'s SOF") ¶ 1.111 (Dkt. No. 83).

On November 11, 2011, Ms. Johnson brought suit against BAE Systems, Inc., BAE Systems Information Solutions, Inc. (collectively "BAE" or "Defendants"), and Mr. Schiller in the Superior Court of the District of Columbia, asserting that Mr. Schiller's actions had caused her "severe physical and emotional health problems" and that she had been denied a promised promotion as a result of Mr. Schiller's efforts to retaliate against her for refusing his advances. Complaint at 8.  Defendants removed to this Court and filed Motions to Dismiss.  The Court dismissed the suit against Mr. Schiller for lack of personal jurisdiction and dismissed several of the claims against BAE.  Four tort claims survived:  (1) negligent supervision, (2) sexual battery, (3) intentional infliction of emotional distress, and (4) defamation.  The case proceeded to discovery.

During discovery, BAE arranged for an expert witness to conduct a medical examination of Ms. Johnson in order to respond to her claims concerning her health problems.  BAE requested medical records in preparation for this examination.  Ms. Johnson provided BAE with falsified medical records which she had edited in an effort to eliminate references to health issues that predated her deployment to Iraq.  This episode was the basis of a sanctions motion filed by BAE, seeking dismissal.  This Court granted in part and denied in part BAE's motion, and sanctioned Ms. Johnson and her counsel with fees and an adverse inference instruction.

The events which precipitated the current sanctions motion occurred during the pendency of the previous sanctions motion.  Over the summer and fall of 2013, BAE sought information about emails and other files on the computer Ms. Johnson used during her deployment.  On September 25, 2013, BAE requested a forensic examination of Ms. Johnson's computer.

Defendants' Second Motion for Sanctions ("Sanctions Mot.") Exh. J (Dkt. No. 63). That evening, Ms. Johnson contracted with a local computer technician who performed various maintenance functions, which included running a program called CCleaner that is capable of permanently deleting files. *Id.* at Exh. K; Plaintiff's Opposition to Defendants' Second Motion for Sanctions ("Sanctions Opp.") Exh. T (Dkt. No. 65). Subsequent forensic analysis showed that several Microsoft Outlook .pst email storage files were placed into the recycling bin and deleted on September 27. Sanctions Mot. Exh. K.

BAE filed this second sanctions motion and again seeks dismissal, citing the alleged deletion of computer files as well as other examples of what it portrays as a general pattern of dishonesty on Ms. Johnson's behalf during the discovery process as justification for the most severe sanctions available.

Shortly after filing the second sanctions motion, BAE filed a motion for summary judgment with an attached statement of material facts to which there is no genuine dispute. Defendants' Motion for Summary Judgment ("SJ Mot.") (Dkt. No. 68). Ms. Johnson responded in opposition with a "statement of material facts in dispute" that contravened the requirements of Local Rule 7(h)(1); rather than providing a "concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," Ms. Johnson's document was a lengthy recitation with apparently no effort made to distinguish between material and immaterial facts or between facts in dispute and facts as to which there was no dispute. The Court ordered Ms. Johnson to provide an amended statement of material facts with strict limitations regarding content and form. Order on Motion for Summary Judgment (Dkt. No. 82).

After Ms. Johnson produced an amended statement of facts in dispute and BAE was given a chance to respond, the Court held a hearing to discuss outstanding motions, including those considered herein.  The Court received testimony from Ms. Johnson, her computer forensics expert, and the technician with whom she contracted to work on her computer in September 2013.  Having considered the testimony given at the hearing, as well as the parties' various filings, the Court is now prepared to decide Defendants' motions for sanctions and summary judgment.

## II.     LEGAL ANALYSIS

### A.     Defendants' Motion for Summary Judgment

As a threshold matter, the Court must determine whether Ms. Johnson's tort claims are preempted by the doctrine announced in *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009).  In *Saleh*, the Court of Appeals held that "[d]uring wartime, where a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted."  580 F.3d at 9.  Although the holding is broadly stated, *Saleh* acknowledged that "a service contractor might be supplying services in such a discrete manner—perhaps even in a battlefield context— that those services could be judged separate and apart from combat activities of the U.S. military."  580 F.3d at 9.  The example provided by the Court is a situation in which the contract contains a "performance-based statement of work."  *Id.* at 10.  Therefore, analysis of whether the *Saleh* preemption applies requires consideration of the contract under which the services were rendered.  BAE has refused to produce its contract with the DIA.  Alerted to the possibility that this Court would not consider *Saleh* preemption in the absence of the contract, BAE determined

that it would rather accept the Court's rejection of its *Saleh* argument than produce the contract. Transcript of Motions Hearing ("Transcript") at 197-98 (Dkt. No. 90).  The Court thus considers the *Saleh* issue waived.

Ms. Johnson's remaining claims assert: (1) negligent supervision; (2) sexual battery; (3) intentional infliction of emotional distress; and (4) defamation.  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, the nonmoving party bears the burden of production under Rule 56 to designate specific facts showing that there is a genuine issue for trial."  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)) (internal quotation marks omitted).  Under the standard as applied to this case, summary judgment is appropriate where Ms. Johnson has failed to produce evidence allowing a reasonable jury to find in her favor.  The Court grants summary judgment to BAE on the claims for negligence, battery, and defamation, and denies summary judgment on the claim for intentional infliction of emotional distress.

(1) *Negligent Supervision*

In order to sustain a claim for negligent supervision, Ms. Johnson must show (1) that BAE knew or should have known that Mr. Schiller would act inappropriately and, armed with this knowledge, (2) failed to adequately supervise him, (3) resulting in harm to Ms. Johnson.  *See Phelan v. City of Mount Rainier*, 805 A.2d 930, 937-38 (D.C. 2002).  Ms. Johnson produces no evidence allowing a jury to reach this conclusion.

6

Mr. Schiller obtained a top-secret clearance and underwent a criminal background check as part of the BAE hiring process, and his hiring was approved by the DIA.  Def.'s Resp. ¶ 1.51, 1.55-56. BAE maintains an anti-harassment policy and requires its employees to take anti-harassment training and acknowledge that harassment was grounds for termination; Mr. Schiller completed this training.  *Id.* at 1.52-54, 57-59.  Ms. Johnson makes a number of unsubstantiated comments in an attempt to demonstrate that BAE should have gone further: for example, she claims that "BAE knew before it hired Mr. Schiller that his work record was sketchy, raising questions of instability, and where there is instability, there must be a reason."  SJ Opp. at 9. This assertion is based on tenuous logic that no reasonable jury could credit.  The apparent fact that "from 2005-2009 Mr. Schiller never worked at any one place for much beyond two years, and then generally was a lecturer, or some other relatively low-level position, given his educational background and experience in the security field," *id.*, is not sufficient to trigger a duty to investigate; the proposition that Mr. Schiller merited additional scrutiny simply because he taught courses as a lecturer at Johns Hopkins and Georgetown borders on the absurd.  Ms. Johnson furthermore produces no evidence that additional investigation would have revealed any history of sexual harassment on Mr. Schiller's part.  Def.'s Resp. ¶ 1.67-69.  This part of Ms. Johnson's claim is therefore premised on the inference that BAE through a more thorough investigation might have discovered something that is not in the record regarding Mr. Schiller's history—something that was missed by both a criminal background check and a top secret clearance investigation.  A reasonable jury could not make such an inference.

Ms. Johnson also fails to present evidence that BAE was aware of Mr. Schiller's inappropriate behavior and failed to take action.  Ms. Johnson admits that Mr. Schiller, Mr. Garboczi, and Ms. Allen were the only BAE employees assigned to the AQI team.  Def.'s Resp.

¶ 1.70.  Although Ms. Johnson asserts that she complained about Mr. Schiller's conduct to DIA and military personnel, there is no evidence that any DIA or military personnel relayed these complaints to BAE.  *Id.* at 73-74.  To the extent that these government personnel should have alerted BAE, that is their failure and not BAE's.  Ms. Johnson produces no evidence that she complained to anyone at BAE other than Rachel Allen.  The unrebutted evidence shows that Ms. Allen was not a managerial employee and that no additional harassment occurred after Ms. Johnson confided in Ms. Allen.

Ms. Johnson devotes a substantial portion of her brief in opposition to summary judgment to discussing BAE's response after Ms. Johnson reported Mr. Schiller's behavior to the appropriate authorities in February 2011.  That response is irrelevant for purposes of a negligence claim, because Ms. Johnson does not allege that Mr. Schiller interacted with her in any way after she officially reported his behavior, and she produces no evidence that she was harmed by Mr. Schiller after his conduct was brought to BAE's attention.

In the absence of any evidence establishing that BAE knew or should have known that Mr. Schiller would behave inappropriately and failed to provide adequate supervision, no reasonable jury could decide in Ms. Johnson's favor on this claim.

(2) *Sexual Battery*

As this Court recognized in rejecting BAE's motion to dismiss Ms. Johnson's tort claims, there is no dispute concerning whether Mr. Schiller's hand made contact with Ms. Johnson's buttocks shortly after the two of them exited the dining hall after dinner one night in January 2011.  Def.'s Resp. ¶ 1.38-46.  Regardless of Mr. Schiller's intent, this was "an intentional act that cause[d] . . . offensive bodily contact."  *Smith v. District of Columbia*, 882 A.2d 778, 787 (D.C. 2005).  Mr. Schiller, however, has been dismissed from the case.  The question before the

Court is not whether a battery occurred; it is whether BAE can be held liable for Mr. Schiller's actions.

An employer is only liable for torts committed by employees if those torts are within the scope of the employment. *See Boykin v. District of Columbia*, 484 A.2d 560, 561-62 (D.C. 1984).  In the case of intentional torts, the question is whether the conduct "was motivated to any extent by [a] desire to serve [the] employer." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 758 (D.C. 2001); *see also District of Columbia v. Bamidele*, 103 A.3d 516, 525 (D.C. 2014) ("At least where intentional torts are concerned, it is not enough that an employee's tortious activity occurs while he is on duty, or even that those duties bear some causal relationship to the tort."). The D.C. Court of Appeals has rejected the argument that "sexual assaults are, as a matter of law, solely for the employee's benefit," but has nonetheless acknowledged that "it is probable that the vast majority of sexual assaults arise from purely personal motives." *Brown*, 782 A.2d at 758.

The Court previously recognized that "Ms. Johnson's claim against BAE Systems is rather weak because Mr. Schiller's alleged sexual assault of Ms. Johnson on the facts alleged appears to be far afield from the duties of his employment," but concluded that "this is a factual question that cannot be resolved at [the motion to dismiss] stage."  Memorandum & Opinion on Motion to Dismiss (Dkt. No. 12).  After extensive discovery, Ms. Johnson has failed to produce any evidence that would allow a reasonable factfinder to determine that Mr. Schiller's actions were "actuated, at least in part, by a desire to serve his principal's interest." *Brown*, 782 A.2d at 758 (quoting *Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C. 1986)) (internal quotation mark omitted).  The incident took place outside the dining hall, while neither Mr. Schiller nor Ms. Johnson was engaged in work activities.  Def.'s Resp. ¶ 1.38.  It did not occur as the result of any

work place argument or disagreement. *Id.* at ¶ 1.29.  Mr. Schiller denies that he was motivated

by serving BAE's interests.  SJ Mot. Exh. E at 80.  Ms. Johnson's theory of liability is that

"Schiller was an employee of BAE; he was assigned to Iraq by BAE; the events occurred while

he was working for BAE under contract with DIA; BAE benefited financially from Schiller's

activities while deployed to Iraq; the sexual assault would not have occurred but for Schiller

being assigned to Iraq."  Pl.'s SOF ¶ 1.26.  The D.C. Court of Appeals has specifically rejected

the argument that this type of but-for causation is sufficient to establish employer liability.  *See*

*Bamidele*, 103 A.3d at 525.  In the absence of any evidence that the underlying contact occurred

during work activities, served BAE's interests, or was intended to serve BAE's interests, no

reasonable factfinder could determine that Mr. Schiller's physical contact with Ms. Johnson

occurred within the scope of his employment.

       (3) *Intentional Infliction of Emotional Distress*

       There are three prongs to a claim for intentional infliction of emotional distress: "(1)

extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly

(3) causes the plaintiff severe emotional distress."  *Purcell v. Thomas*, 928 A.2d 699, 711 (D.C.

2007) (quoting *Howard University v. Best*, 484 A.2d 958, 985 (D.C. 1984)) (internal quotation

marks omitted).

       "To be actionable, conduct must be 'so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency.'"  *Howard University*, 484 A.2d at 986 (quoting

*Jackson v. District of Columbia*, 412 A.2d 948, 957 (D.C. 1980)).  It is undisputed that, in

addition to touching her buttocks, Mr. Schiller commented on Ms. Johnson's physical attributes

or made other sexual remarks to her on several occasions.  Def.'s Resp. ¶ 2.10.  A reasonable

jury could conclude that Mr. Schiller's comments, taken as a whole, passed beyond the bounds

of decency. *See Howard University*, 484 A.2d at 986 ("Recognizing that women suffer sexual harassment in the workplace, based on outmoded sexual sterotypes (sic) and male domination of subordinate female employees, we reject that view . . . that, as a matter of law, the degrading and humiliating behavior herein detailed was at worse a 'social impropriety' which did not amount to intentional infliction of emotional distress."); *id.* ("Repeated harassment . . . may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability.") (quoting *Boyle v. Wenk*, 392 N.E.2d 1053, 1056 (Mass. 1979)) (internal quotation marks omitted) (alteration in original). Ms. Johnson's claim also survives the second prong, as "[i]ntent or recklessness can be inferred from the outrageousness of the acts." *Id.* at 985.

That leaves the third prong. Ms. Johnson has produced medical records reflecting that she has struggled with depression and other health issues since returning from Iraq and that she attributes these issues to "being sexually harassed when deployed to Iraq." SJ Opp. Exh. 62. Her medical records also indicate, however, that she has a long history of severe depression dating back to childhood. Ms. Johnson has attempted to hide this history by lying on government forms and in depositions and going so far as to alter medical records produced as part of this litigation, conduct for which she has been sanctioned. As a result of this conduct, the Court has previously determined that the jury will receive an adverse inference instruction regarding Ms. Johnson's medical and mental health history. While this adverse instruction will undoubtedly make it more difficult for Ms. Johnson to demonstrate that she suffered harm as a result of Mr. Schiller's behavior, a reasonable jury could still conclude that Mr. Schiller's actions caused Ms. Johnson to experience severe emotional distress.

As with Ms. Johnson's claim for battery, the inquiry does not conclude with the Court's determination that Ms. Johnson's tort claim against Mr. Schiller could survive summary judgment.  BAE's liability is premised on the same respondeat superior theories discussed in the context of the sexual battery claim.  Unlike with the sexual battery claim, however, there is evidence that some of Mr. Schiller's inappropriate comments occurred while Ms. Johnson and Mr. Schiller were engaged in work activities.  Def.'s Resp. ¶ 1.79-103.  A reasonable jury therefore could conclude that Mr. Schiller's actions "arose out of and in the course of employment," which would subject BAE to liability for those actions.  *Howard University*, 484 A.2d at 987 (noting that "many of the incidents of alleged sexual harassment occurred during . . . professional meetings attended by [the perpetrator and the victim] in their professional capacities").  Summary judgment is therefore inappropriate for this claim.

(4) *Defamation*

In order to prevail on the defamation claim, Ms. Johnson must show "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Klayman v. Segal*, 783 A.2d 607, 613 n.4 (D.C. 2001) (quoting *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001)) (internal quotation mark omitted).

Ms. Johnson has failed to provide evidence of any false and defamatory statements made by Mr. Schiller or anyone else associated with BAE.  Def.'s Resp. ¶ 1.76-77.  Ms. Johnson claims that "she learned that [Schiller] had trashed her work product, calling it faulty, inaccurate, poorly written, [and] below the standard acceptable for publication."  SJ Opp. at 25.  She

declines, however, to provide any citations to the record in support of this claim. *See* Def.'s Resp. ¶ 1.76. Nor has Ms. Johnson produced any evidence that Mr. Schiller discussed her work performance with anyone outside the AQI team. *See id.* at ¶ 1.77. As our Court of Appeals has observed, "a party alleging defamation cannot possibly prevail at trial unless one or more persons could be found to testify to having received the alleged defamations." *Benic v. Reuters America, Inc.*, 357 F. Supp. 2d 216, 224 (D.D.C. 2004) (quoting *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 43 (D.C. Cir. 1990)) (internal quotation marks omitted). In the absence of admissible evidence supporting her claim, no reasonable jury could decide in Ms. Johnson's favor.

## B.   Defendants' Motion for Sanctions

This Court has previously discussed at length the rules governing discovery sanctions. Sanctions may be ordered under either Federal Rule of Civil Procedure 37(b) or the court's inherent power. A production order is required to trigger Rule 37(b), s*ee Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995), and there was no order in place regarding Ms. Johnson's computer files. In the absence of such an order, this Court may use its inherent powers to order sanctions, including dismissal. "[R]eview proceeds in much the same manner whether the district court took its authority from Rule 37(b)(2) or from its inherent power." *Webb v. District of Columbia*, 146 F.3d 964, 972 n. 16 (D.C. Cir. 1998)

In this Circuit, dismissal or default judgment under the inherent power requires clear and convincing evidence of litigation misconduct. *Shepherd*, 62 F.3d at 1477-78. The district court also "must provide a specific, reasoned explanation for rejecting lesser sanctions." *Id.* at 1478. Dismissal is generally appropriate only "where the destroyed document is dispositive of the case, so that an issue-related sanction effectively disposes of the merits anyway" or "where the guilty

party has engaged in such wholesale destruction of primary evidence regarding a number of issues that the district court cannot fashion an effective issue-related sanction." *Id.* at 1479.

Courts contemplating dismissal are directed to consider the factors outlined in *Shea v. Donohoe Construction Company*, 795 F.2d 1071 (D.C. Cir. 1986): (1) whether the party's behavior has hampered the other party's ability to present their case; (2) "the prejudice caused to the judicial system when the party's misconduct has put an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay"; and (3) "the need to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Webb*, 146 F.3d at 971. The third rationale requires a finding of flagrant or egregious misconduct in order to justify dismissal in the absence of other factors. *Id.* at 975.

(1) *Plaintiff engaged in discovery misconduct*

The Court finds by clear and convincing evidence that Ms. Johnson destroyed, attempted to destroy, or caused to be destroyed files on her computer with potential relevance to this case. Shortly after BAE's counsel informed Ms. Johnson's counsel that BAE would seek a forensic examination of Ms. Johnson's computer, Ms. Johnson arranged for James Ferrell, a computer technician, to run maintenance programs on her laptop. At least one of these maintenance programs can be used to permanently delete files. *See* Sanctions Mot. Exh. K. Although the Court credits Mr. Ferrell's testimony that he did not selectively delete files, Mr. Ferrell also testified that Ms. Johnson did not inform him that she was involved in litigation or ask him not to delete anything from her computer. It is therefore possible that the clean-up processes resulted in files being irretrievably deleted. *See* Sanctions Mot. Exh. K. The Court's understanding is that

there is no way to conclusively determine the extent to which files may have removed from the laptop.

The Court does have information about some files, however. On the day Mr. Ferrell completed his work, between two and four Outlook .pst files containing thousands of emails were placed into the recycling bin and deleted from Ms. Johnson's computer. Sanctions Mot. Exh. K; Transcript at 35. Ms. Johnson acknowledges that only she and Mr. Ferrell had access to the laptop on that day. Transcript at 79. Mr. Ferrell testified that he did not place the files in the recycling bin. Plaintiff's Response to Defendant's Second Motion for Sanctions ("Pl.'s Sanctions Resp.") Exh. T (Dkt. No. 72); Transcript at 92. The Court credits his testimony and therefore concludes that Ms. Johnson placed the files in the recycling bin and subsequently deleted them.

According to BAE's expert, the .pst files were unrecoverable. Sanctions Mot. Exh. K. Ms. Johnson's expert testified that some but possibly not all of the emails were recoverable. Pl.'s Sanctions Resp. Exh. T; Transcript at 38. The Court must note that Ms. Johnson and her counsel were evasive and unclear when questioned as to whether their forensic expert had actually recovered the emails or merely concluded that they were recoverable and produced metadata indicating the subject of the emails, the sender and recipient, and the time of transmission. For present purposes, it is irrelevant: the Court has already determined that Ms. Johnson deleted the .pst files, and, even if her expert eventually was able to recover the emails contained within, Ms. Johnson has not produced any of those emails. The potential for future compliance with discovery requirements is not an excuse for attempting to destroy computer files. Moreover, under no circumstances should Ms. Johnson have contracted with a computer technician to "clean up" a computer sought for forensic imaging, particularly without making a

disk image or even informing the technician of ongoing litigation.  That she chose to do so is very troubling.

The Court is similarly troubled by Plaintiff's failure to produce Facebook messages from earlier than February 2013.  Plaintiff requested an "archive" from Facebook on February 25, 2013.  Sanctions Mot. Exh. H.  She claims to have never downloaded the requested files, for reasons that have not been adequately explained and are in any case unsatisfactory.[2]  When another archive was requested and downloaded in June 2013, it contained no messages that occurred prior to February 2013.  Although the Court has been provided with no evidence detailing the Facebook archiving system, it seems highly suspect that Johnson requested an archive in February 2013, which she has never produced, and that it just so happens that a subsequently produced archive contained no messages before that same month.  Moreover, it is undisputed that Johnson participated in at least one relevant exchange of Facebook messages prior to February 2013, a July 2011 conversation with Army Capt. Joshua Micko.  Sanction Mot. Exh. E.  This conversation was not found in the Facebook archive produced by Ms. Johnson, but an excerpt was produced separately.  Ms. Johnson has offered varied and conflicting testimony regarding how she preserved this excerpt.  Shockingly, when questioned at the motions hearing as to where the rest of the July 2011 conversation was, Ms. Johnson produced a more complete version—a version that she had thus far failed to produce to BAE and that she indeed had not even revealed to her counsel.  The Court struggles to understand how a litigant could bring responsive and unproduced evidence to a hearing to investigate whether she had fully complied

_____

[2] Ms. Johnson offered the following explanation for why the files were not downloaded in February: "Well, I, at the time, tried to download it, but I was not, I guess, over a – I don't know, I guess the file was too big.  Anyway, it just – it wouldn't download.  The download wouldn't finish.  And I don't remember if I was at work on my lunch hour, if I was at home, but it just – it never downloaded."  Transcript at 65.  At the hearing, the Court asked Ms. Johnson to complete a Facebook archive download in order to see how the process worked.  The process was simple and easily completed.  The Court can discern no reason why Ms. Johnson could not have completed the archive download in February 2013, and her failure to do so effectively resulted in the loss or destruction of Facebook messages prior to that time.

with her discovery obligations.  The complete Facebook transcript and surrounding

circumstances provide clear and convincing evidence that Ms. Johnson failed to comply with her

discovery obligations with regards to the requested Facebook messages.

>    (2) *Plaintiff's conduct does not warrant dismissal*

Upon consideration of the factors discussed in *Shepherd* and *Shea*, however, the Court

does not believe that the sanction of dismissal is warranted.  BAE does not argue that its defense

has been meaningfully hampered by the deletion of files from Ms. Johnson's computer or her

failure to produce Facebook messages; indeed, BAE's merits defense is largely based on the

alleged inapplicability of respondeat superior liability, an issue upon which Ms. Johnson's emails

and Facebook messages could shed little light; what little prejudice exists can be adequately

mitigated by disallowing Ms. Johnson from attempting to prove facts regarding Mr. Schiller's

behavior other than those to which he admits.  Furthermore, although the Court is not pleased

that it has had to deal with this issue, it cannot fairly be said that Ms. Johnson's conduct has

placed an intolerable burden on the Court.  That leaves the final *Shea* factor: the need to protect

the court as an institution by punishing and deterring a litigant's disrespectful behavior.  Over the

course of this suit, Ms. Johnson has repeatedly obfuscated the truth.  She has altered medical

records, contradicted herself in depositions and testimony before the Court, and failed to

preserve and produce relevant documents during discovery.  At the Court's most recent

hearing—a hearing concerning BAE's contentions that the plaintiff failed to comply with her

discovery obligations—Ms. Johnson produced for the first time a responsive document that not

even her counsel was aware was in her possession.  After the hearing, Ms. Johnson sought leave

to file a declaration claiming that the files from her laptop had been transferred to a new

computer in 2011, information that she had never previously mentioned despite its relevance to

the sanctions motion under review and even though she had ample opportunity provide such evidence at the hearing.  She has demonstrated both a lack of veracity and a lack of judgment, and sanctions are certainly appropriate.

The Court cannot, however, find by clear and convincing evidence that Ms. Johnson's behavior is egregious or flagrant enough to justify the ultimate sanction of dismissal. "Particularly in the context of litigation-ending sanctions, [the Court of Appeals has] insisted that . . . our system favors the disposition of cases on the merits, [and that] dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success or would obviously prove futile." *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996) (internal quotation marks omitted).  Although it is an exceedingly close question, the Court concludes that Ms. Johnson's conduct does not merit this most serious of remedies.  *See Webb*, 146 F.3d at 975-76.  The Court does not find that Plaintiff destroyed documents that are dispositive of the case, *see Shepherd*, 146 F.3d at 1479, and the prejudice to BAE can be mitigated substantially by limiting Plaintiff's case to the undisputed facts relating to Schiller's conduct.  Accordingly, the Court can and will issue both punitive and remedial sanctions.

(3) *Appropriate sanctions and orders*

(i)      The Court admonishes Plaintiff and her counsel that any further irregularities, evasions, or untruths will result in dismissal of her remaining claim and referral to disciplinary authorities.

(ii)      The Court HEREBY ORDERS that BAE is entitled to an adverse inference instruction.  A sample instruction is attached to this Memorandum Opinion and Order. This instruction supplements the adverse inference instruction attached to this Court's previous sanctions order.

(iii)     IT IS FURTHER ORDERED that Plaintiff is precluded from seeking to prove Mr. Schiller's conduct went beyond that acknowledged in Mr. Schiller's deposition and set forth at Def.'s Resp. ¶ 2.10.

(iv)     IT IS FURTHER ORDERED that Plaintiff's counsel is to turn over, within two weeks of the issuance of this Order, any and all responsive documents that are recoverable from the deleted Outlook .pst files.

(v)     IT IS FURTHER ORDERED that Defendants are entitled to recoup their computer forensic expert's fee for all reasonable time spent in the prosecution and hearing of this sanctions motion.  The parties shall meet and confer in an attempt to determine the amount of the fee attributable to recovering deleted files.  If the parties are unable to resolve the issue by no later than June 8, 2015, BAE shall prepare and file a report detailing the relevant fees, and the Court will determine the appropriate amount.

(vi)     IT IS FURTHER ORDERED that Plaintiff's claims for negligent supervision, sexual battery, and defamation are dismissed with prejudice.

## III.     CONCLUSION

For the foregoing reasons, BAE's Motion for Sanctions (Dkt. No. 63) is **GRANTED IN PART** and **DENIED IN PART** and BAE's Motion for Summary Judgment (Dkt. No. 68) is **GRANTED IN PART** and **DENIED IN PART**.

SO ORDERED.


Date:                                         _____

ROBERT L. WILKINS
United States Circuit Judge
(Sitting by designation in the United States
District Court for the District of Columbia)

**Court's Proposed Adverse Inference Instruction**

In assessing Plaintiff's testimony, you may consider the fact that shortly after learning that Defendants would seek forensic imaging of her HP laptop, Plaintiff contracted with a computer technician who installed and ran a variety of maintenance programs on the computer, including a program called CCleaner which is capable of permanently deleting files.  Evidence has also been presented during the trial indicating that potentially responsive emails were deleted from Plaintiff's computer either as this technician was finishing his work or shortly thereafter.  In addition, evidence has been introduced indicating that the Plaintiff failed to complete a download of her Facebook messages in February 2013, and that it is now impossible to download any of her Facebook messages from prior to February 2013.  As I previously informed you, evidence has also been presented indicating that the Plaintiff falsified medical records and provided false or misleading information about those medical records when questioned under oath prior to trial. To the extent that any of these matters are in dispute, it is your duty to find where the truth lies.

As a result, I instruct you that you may, but are not required to, presume that the deleted emails or other files previously located on the Plaintiff's computer would have contained evidence favorable to the Defendants.  Similarly, you may, but are not required to, find that Facebook messages existed prior to February 2013 that are no longer available and that would have been favorable to defendants.  Furthermore, if you find that the Plaintiff provided false testimony, while under oath, about any matter, then I instruct you that the Plaintiff's testimony during this trial should be considered with caution and scrutinized with care.