# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LYNN M. JOHNSON,** | |
| Plaintiff, | |
| v. | Civil Action No. 11-cv-02172 (RLW) |
| **BAE SYSTEMS, INC.,** *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Sanctions, Plaintiff's Opposition, and Defendants' Reply. The defendants ask this Court to impose sanctions pursuant to its inherent power because the plaintiff falsified medical records that she produced in discovery. After hearing argument from both parties, as well as testimony from the plaintiff, the Court finds by clear and convincing evidence that (1) the plaintiff submitted false medical records to the defendants, and (2) the plaintiff's counsel failed to certify the plaintiff's discovery response and failed to investigate and correct her deficient response. For these reasons, the Court sanctions both the plaintiff and her counsel.

### I.     BACKGROUND

Plaintiff Lynn M. Johnson sued Defendants BAE Systems, Inc., BAE Systems Information Solutions, Inc. (collectively "BAE" or "defendants"), and Thomas S. Schiller, an employee of BAE, for gender discrimination, sexual harassment and retaliation in connection with her employment for the Defense Intelligence Agency ("DIA"). *See* Plaintiff's Complaint (Pl.'s Compl.) ¶ 1. Ms. Johnson alleged that Mr. Schiller, her trainer and first-liner supervisor, made inappropriate comments about her body and physical appearance, "grabbed and squeezed

[her] buttocks," and made other sexual advances while she was deployed to Iraq for the DIA. *See id*. at ¶¶ 9, 13, 14. Ms. Johnson also alleges that as a result of Mr. Schiller's behavior, she "experienced severe physical and emotional health problems" and sought medical attention while deployed in Iraq and upon her return to the United States. *See id*. at ¶ 23. She also alleges that her physicians "diagnosed her as suffering from anxiety and depression," and that she is "being treated for an adrenal disorder." *See id*.

Plaintiff's principal claim for damages is emotional distress.[1] Accordingly, the defendants have focused their discovery efforts on the plaintiff's medical history. Defendants hired as an expert Stephen Siebert, M.D., to examine the plaintiff regarding her alleged emotional distress. *See* Defendants' Motion for Sanction (Defs.' Mot.) at 3. In preparation for Dr. Siebert's examination of the plaintiff, the defendants requested her medical records. As part of her response, Ms. Johnson provided documents that she represented were her treatment records with Charles Hayden, M.D., her primary treating physician after she returned from her deployment in Iraq. *See* Plaintiff's Opposition to Defendants' Motion for Sanction (Pl.'s Opp.) at 2–4. Although the defendants allege that the plaintiff engaged in other discovery misconduct,[2] the plaintiff's treatment records with Dr. Hayden are the focus of the defendants' motion.

---

[1] After the Court granted Mr. Schiller's motion to dismiss and granted in part BAE's motion to dismiss, (ECF. No. 12), the plaintiff's remaining claims against BAE were negligent supervision, intentional infliction of emotion distress (IIED), sexual battery, and defamation.

[2] Defendants' motion alleges that the plaintiff continues to conceal the identity of her treatment providers, that she lied in her deposition about her mental health history and medical treatment, and that she altered authorizations for the release of medical of records, among other conduct. *See* Defendants' Reply in Support of its Motion for Sanctions (Defs.' Reply) at 4–7. Plaintiff does not directly contest these allegations, but asserts generally that she has made efforts to comply with the defendants' discovery requests. *See* Pl.'s Opp. at 1–3. The Court will not directly address all of the defendants' allegations, but notes that the plaintiff's efforts in responding to the defendants' discovery requests have been unsatisfactory.

With this backdrop, the Court finds, by clear and convincing evidence, that the following events occurred[3]:

On April 4, 2013, BAE sent the plaintiff correspondence explaining that, "[g]iven Ms. Johnson's claimed compensatory damages and her retention of an expert to testify regarding same, Ms. Johnson will need to undergo an independent medical examination by our expert, Stephen Siebert, M.D., M.P.H. . . . Please also ensure that we have all available medical records well in advance of the examination." Defs.' Mot. Ex. D at 1. BAE scheduled Dr. Siebert's medical examination of Ms. Johnson for May 15, 2013. *See* Pl.'s Opp. at 4.

On May 14, the day before Dr. Siebert's scheduled examination of Ms. Johnson, Ms. Johnson gave her counsel, Mr. Jordan, a copy of what purported to be her treatment records with Dr. Hayden, as well as information regarding her pre- and post-deployment psychiatric screenings. *See id*. That same day, Mr. Jordan mailed the documents—without a cover letter, bates stamp, or any other means of identifying and describing the disclosure—to BAE. *See id*. Mr. Jordan did not review Ms. Johnson's treatment records prior to mailing them to BAE. *See id.* at 5.

BAE received Ms. Johnson's treatment records on May 15, the day of her examination. *See* Defs.' Mot. Ex. H at 1. At her examination, Ms. Johnson also provided Dr. Siebert with a copy of what purported to be her treatment records with Dr. Hayden. *See id.* Ex. I at 1. Dr. Siebert's examination of Ms. Johnson made it clear, however, that the medical information provided by Ms. Johnson and her counsel was incomplete. *See id.* at 6.

On June 14, BAE issued a subpoena and deposition notice for Dr. Hayden. *See id.* Ex. S. On the same day BAE issued the subpoena and deposition notice, Ms. Johnson called Mr. Jordan

---

[3] Plaintiff does not dispute that these events occurred.

3

and revealed that she had deleted, altered, and forged information in her treatment records with Dr. Hayden. Pl.'s Opp. at 5. She also told Mr. Jordan that she was unsure whether the records they sent to BAE—both the copy Mr. Jordan mailed to BAE and the copy she provided to Dr. Siebert at her examination—were the accurate or falsified records. *See id.* Mr. Jordan had not retained a copy of the treatment records he mailed to BAE on May 14. *See id.*

Mr. Jordan told Ms. Johnson to obtain another copy of her treatment records from Dr. Hayden, which Mr. Jordan sent approximately one week later to BAE. *See id.*; Pl.'s Opp. App. A. Mr. Jordan sent this copy of her medical records as an attachment to a June 24 letter that addressed alleged deficiencies in the plaintiff's response to several of BAE's interrogatories. Defs.' Mot. Ex. P. The letter did not indicate why the plaintiff was resending what appeared to be a duplicate copy of her treatment records, and a reason was not readily apparent because these treatment records were not directly responsive to any of the interrogatories addressed in the June 24 letter. *See id.* Mr. Jordan's subtle disclosure led BAE to believe that the attachment was an unredacted copy of the treatment records already in BAE's possession, but with a single additional treatment record dated June 18, 2013. *See* Defs.' Mot. at 9–10.

It was not until BAE began its preparation for the depositions of Dr. Hayden on July 10 and Ms. Johnson on July 12 that it realized the significance of the attachment to the June 24 letter. While examining this attachment and comparing it to the version BAE received on May 15, they uncovered numerous discrepancies. *See* Defs.' Mot. at 10. The discrepancies are detailed in a chart (without the accompanying footnotes) that was included in Defendants' Motion for Sanctions. *See* Defs.' Mot. at 10–12.

Plaintiff does not dispute the allegations in the chart. The Court reprints the chart here without any alteration:

| Authentic | Forged | Alteration |
|---|---|---|
| 7 | 4 | Johnson deleted<br>Exhibit J at 232-233. |
| 9 | 6 | Johnson deleted Johnson replaced each of<br>*See* Exhibit J at 243-244. |
| 8 | 5 | The substance of this **<u>entire</u>** record was erased and new entries were fraudulently made during this litigation. She then added entries indicating<br>*See* Exhibit J at 237-24 1. |
| 10 | 7 | Johnson deleted the note<br> *See* Exhibit J at 245-246. |
| 11 | 8 | Johnson deleted          . *See* Exhibit J at 249. |
| 12 | 9 | Johnson erased the entry      Johnson deleted the entire entry under and subsequently wrote. She also created a new entry by circling<br>. *See* Exhibit J at 251-52. |
| 13 | 10 | Johnson deleted the entry that and added |
| 14 | 11 | Johnson erased *See* Exhibit T at 44.  Johnson also wrote in the word |
| 15, 21, 24 | 12, 15, 17 | Johnson added |
| 17 | 30 | Johnson inserted the word |
| 18 | 31 | Johnson deleted the notation that says |
| 19 | -- | Johnson entirely removed the   *See* Exhibit T at 71 -72. |
| -- | 13 | Johnson created a record stating then forged Dr. initials. *See* Exhibit J at 257-258. |
| 22 | -- | Johnson removed document from records. |
| 25 | -- | Johnson removed |
| 26 | 18 | Johnson removed |
| 27 | 19 | Johnson removed  Johnson also inserted   Finally, she wrote in<br>None of these entries exist on Dr.                original record. |
| 28 | -- | Johnson removed a record |
| 29 | -- | Johnson removed a record |
| -- | 20 | Johnson completely manufactured record and forged  Dr. initials. |
| 30 | 21 | Johnson removed Dr  's note        She replaced that entry with<br>She also falsely indicated that Dr.        selected " Johnson then erased and replaced  Last, Johnson filled in |

## II.    LEGAL ANALYSIS

The record establishes not only that Ms. Johnson provided Dr. Siebert with falsified treatment records, but also reveals that her counsel, Mr. Jordan, failed to certify the plaintiff's discovery response and then failed to investigate and correct this deficient and misleading response. In light of Mr. Jordan's failure to comply with his obligation under the discovery rules, the Court finds it necessary to review the discovery obligations outlined in Rule 26, in addition to discussing to nature and limitations of this Court's inherent authority to sanction litigation misconduct.

**A.** **Discovery Obligations Under the FRCP**

Rules 26–37 of the Federal Rules of Civil Procedure govern the parties' obligations during the discovery process. Rule 26(g) reinforces the various discovery obligations in Rules 26–37 through its certification requirement. *See* FED. R. CIV. P. 26, Advisory Committee Note, 1983 Amendment ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."). Rule 26(g)(1) requires an attorney—or a party if proceeding *pro se*—to sign their discovery response. A party receiving an unsigned discovery submission may properly disregard that response. *See* FED. R. CIV. P. 26(g)(2).

Merely signing a discovery submission, however, does not mean that a party has complied with the certification requirement. An attorney or party has a duty, per Rule 26(g), to perform a reasonable inquiry to determine whether a discovery response is complete and accurate. *See* FED. R. CIV. P. 26(g)(1); *see also* FED. R. CIV. P. 26, Advisory Committee Note, 1983 Amendment ("[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand."). "The duty to make a 'reasonable inquiry' is satisfied if

the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." FED. R. CIV. P. 26, Advisory Committee Note, 1983 Amendment. This is an objective standard. *See id.* Courts "*must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both" for certifications that violate Rule 26(g) "without substantial justification." FED. R. CIV. P. 26(g)(3) (emphasis added).

Further, the parties' discovery obligations do not terminate after their initial submission. Rule 26(e)(1) requires parties to timely supplement their discovery responses and disclosures upon learning that their response or disclosure is incomplete or incorrect, if the other party is not aware of the additional or corrective information. *See* FED. R. CIV. P. 26(e)(1). The obligation to "supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect." FED. R. CIV. P. 26, Advisory Committee Note, 1993 Amendment. The obligation to supplement "applies whether the corrective information is learned by the client or by the attorney." *See id.*

B.        **Inherent Power to Sanction Discovery Misconduct**

The Federal Rules of Civil Procedure are not the only authority available for federal courts to police the parties' conduct during discovery. Federal courts have inherent power "to protect their integrity and prevent abuses of the judicial process." *Shepard v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). The inherent power authorizes courts to enter a default judgment, impose fines, award attorneys' fees and expenses, issue contempt citations, disqualify or suspend counsel, permit adverse evidentiary inferences, and preclude the admission of evidence. *See id.* at 1475. A

court's "use of this power should reflect our judicial system's strong presumption in favor of adjudication on the merits." *Id.*

To exercise its inherent power, a court must satisfy the evidentiary standard applicable to the sanction. *See id.* at 1476–78. To dismiss a case or enter a default judgment, a court must determine that lesser sanctions would not deter and remedy the misconduct. *See id.* at 1478–79.

With respect to the first requirement, the burden of proof depends on the severity of the sanction. Our Court of Appeals has subdivided sanctions into two categories: penal sanctions and issue-related sanctions. *See id.* at 1478. Imposing penal sanctions requires a court to find by clear and convincing evidence that the alleged misconduct occurred. *Id.* at 1477. Penal sanctions include dismissals, default judgments, contempt orders, awards of attorneys' fees, and fines. In contrast, a court can impose issue-related sanctions after finding by a preponderance of the evidence that the alleged misconduct occurred. *Id.* at 1478. Issue-related sanctions include adverse evidentiary determinations and preclusion of evidence. *Id.* at 1478. Second, a court seeking to impose the ultimate sanction of dismissal (or entry of a default judgment) must also "provide a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings." *Id.* at 1478; *see also Webb v. District of Columbia,* 146 F.3d 964, 971 (D.C. Cir. 1998) ("When sanctions are ordered under the court's inherent power, the need to consider less onerous alternatives stems from the intrinsic need for self-restraint in using so powerful a weapon.").

The D.C. Circuit has set forth "three basic justifications that support the use of dismissal or default judgment as a sanction for misconduct." *Webb,* 146 F.3d 964, 971 (D.C. Cir. 1998). "First, the court may decide that the errant party's behavior has severely hampered the other party's ability to present his case—in other words, that the other party 'has been so prejudiced by

the misconduct that it would be unfair to require him to proceed further in the case.' " *Id.* (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986)). "Second, the court may take account of the prejudice caused to the judicial system when the party's misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay.' " *Id.* (quoting *Shea*, 795 F.2d at 1075). "[F]inally, the court may consider the need 'to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future.' " *Id.* (quoting *Shea*, 795 F.2d at 1077).

Although there are distinct categories of penal and issue-related sanctions, an issue-related sanction can operate as a penal sanction. For example, precluding the only source of evidence available in support of a dispositive issue operates as a dismissal, though it's nominally an evidentiary sanction. *See Shepard*, 62 F.3d at 1479. Accordingly, a court should keep in mind the practical effect of its sanction when determining whether that sanction is appropriate.

## C.     The Court Sanctions Plaintiff's Counsel

While BAE is highly critical of the conduct of Mr. Jordan, BAE has not directly asked the Court to sanction the plaintiff's counsel. Nonetheless, during the lengthy sanctions hearing the Court repeatedly put Mr. Jordan on notice that his conduct may warrant sanctions,[4] and the

---

[4] *See, e.g.*, Sanctions Hr'g Tr. at 10–11 (The Court: "Let me cut to the chase Mr. Jordan, because I'm losing patience here. Why shouldn't I sanction you for, after being put on knowledge, that your client altered some documents and that those documents may have been produced to the other side, you took no effort to ascertain whether those documents actually, that had been forged or altered, had been given to the other side?"); *id.* at 11 (The Court: "You took the ostrich approach, it seems to me, and stuck your head in the sand, and, you know, hoped that it would kind of all go away. Why shouldn't I sanction you for that, why isn't that the accurate view of what happened here?); *id.* at 12 (Mr. Jordan: "I did not ask counsel and I did not ask the doctor to give me a copy of what medical records that she provided, that is true"; The Court: "And why shouldn't I sanction you for not having done that?"). Thus, Mr. Jordan had notice and an opportunity to be heard before sanctions were imposed, and therefore he was afforded due

Court now concludes that Mr. Jordan should be sanctioned for failing to certify the plaintiff's disclosure of her treatment records with Dr. Hayden and for failing to correct the plaintiff's disclosure of the falsified treatment records. The Court addresses separately Mr. Jordan's conduct with respect to the May 14 and June 24 disclosures of Ms. Johnson's treatment records with Dr. Hayden.

<u>May 14, 2013 Disclosure of Plaintiff's Treatment Records</u>

Mr. Jordan stated that on May 14, he "put in an envelope, without a cover letter" Ms. Johnson's treatment records with Dr. Hayden, and sent the records to BAE. Pl.'s Opp. at 4. At the sanctions hearing before this Court, Mr. Jordan stated that he did not retain a copy of this submission or bates stamp the submission. *See* Sanctions Hr'g Tr. at 7–8. Consequently, he did not have any way of identifying the documents that were produced to BAE when an issue arose at a later time. Also, because the documents were not accompanied by a formal response, a cover letter or other memoranda, the Court finds that Mr. Jordan did not sign the May 14 discovery response.

Thus, the Court concludes that the May 14 discovery response violated Mr. Jordan's obligations under the discovery rules, for three independent reasons. First, Mr. Jordan did not sign this discovery response. As Rule 26(g) makes clear, counsel or a *pro se* party is required to sign their discovery response, and BAE could have properly ignored an unsigned discovery response. FED. R. CIV. P. 26(g)(2).

Second, even if Mr. Jordan had signed this response, certification would have been improper because Mr. Jordan did not make *any* inquiry—let alone a reasonable one—before sending the response to BAE. Mr. Jordan's representations in the plaintiff's opposition

---

process. *See* GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 29(A) (4th ed. 2008).

establishes that he did not even inspect Ms. Johnson's treatment records before sending them to BAE: "[Ms. Johnson] was also uncertain whether the copy of Dr. Hayden's medical records mailed to BAE's counsel on May 14th was the original or the doctored version. *[Ms.] Johnson's counsel had not reviewed the records mailed to BAE's counsel on June 14th,*[5] and even if [I] had, [I] would not have been able to determine what was or was not authentic, having seen none of the records before." Pl.'s Opp. at 5. Mr. Jordan's failure to inspect, at all, Ms. Johnson's treatment records violates the certification requirement. *See* FED. R. CIV. P. 26, Advisory Committee Note, 1983 Amendment ("[T]he certification duty requires the lawyer to *pause and consider* the reasonableness of his request, response, or objection.") (emphasis added). Counsel does not have to suspect ill motives on the part of their client to question whether a discovery response may simply be incomplete, as opposed to untruthful. This understanding is supported by rule's focus on the completeness of discovery submissions. *See, e.g.*, FED. R. CIV. P. 26(g)(1)(A) ("[W]ith respect to a disclosure, it is complete and correct as of the time it is made.") This is also consistent with Comment 2 of Rule 3.4 of the District of Columbia Rules of Professional Conduct: "[T]o the extent clients are involved in the effort to comply with discovery requests, the lawyer's obligations are to pursue reasonable efforts to assure that documents and other information subject to proper discovery request are produced." DISTRICT OF COLUMBIA RULES OF PROF'L CONDUCT R. 3.4 cmt. 2 (2007).[6]

Third, and assuming again that Mr. Jordan had signed the May 14 response, Mr. Jordan violated his duty under the rules by not even retaining a copy of the documents he produced to

---

[5] The reference to June 14 appears to be a typo and should instead read May 14.

[6] It is significant that Comment 2 of D.C. Rules of Professional Conduct mirrors Comment 2 of the Model Rules of Professional Conduct, *except* for the addition of this sentence. Thus, members of this Bar believed it was especially important that its lawyers use reasonable efforts to ensure the completeness of their discovery responses when involving their clients in the discovery process.

BAE. Without a copy of the documents, Mr. Jordan was unable to monitor the progress of discovery, or verify the completeness and authenticity of the documents being produced should an issue arise later, which was the case here. 10A JOHN KIMPFLEN ET AL., FEDERAL PROCEDURE, LAWYERS EDITION § 26:639 (2007) ("An attorney representing a party in connection with a request for the production and inspection of documents pursuant to Fed. R. Civ. P. 34 has an obligation to verify that his or her client has produced the documents requested, and a further obligation to insure that records are kept indicating which documents have been produced. Failure to comply with these duties has been characterized as careless and inexcusable and has resulted in the imposition of sanctions.") (citing *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*, 106 F.R.D. 59 (D. Mass. 1985)).

Mr. Jordan cannot justify his actions by citing the need to proceed with haste. The plaintiff and her counsel had been aware since April 4 that Dr. Siebert's examination of the plaintiff was scheduled for May 15. *See* Defs.' Mot. Ex. D at 1. If the plaintiff and her counsel decided to wait until the day before the examination to send the requested documents, then so be it—but a party cannot create an urgent situation by their own procrastination and thereafter claim that the urgent situation justifies their noncompliance with their discovery obligations. In short, the Court finds that Mr. Jordan's failure to certify the plaintiff's May 14 discovery response was without any justification, let alone a substantial justification.

June 24, 2013 Disclosure of Plaintiff's Treatment Records

By May 15, BAE had received two copies of Ms. Johnson's treatment records with Dr. Hayden. BAE received one copy in the mail from Mr. Jordan, and another copy from Ms. Johnson the day of Dr. Siebert's examination. Defs.' Mot. at 5–6. According to the plaintiff's opposition, on June 14, Ms. Johnson informed Mr. Jordan that she had falsified her medical

records. Pl.'s Opp. at 5. She also told Mr. Jordan that she was unsure whether either of the prior two sets of documents produced to BAE were "the original or doctored version." *Id.*

At this point, Mr. Jordan had reason to believe that the medical records he had previously produced to BAE were not authentic documents. Under Rule 26(e)(1)(A), he had a duty to correct the prior production. *See* FED. R. CIV. P. 26(e)(1)(A) (stating that a party who has responded to a "request for production" must supplement its response in a "timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). Had Mr. Jordan retained copies of the documents that were previously produced to BAE, he could have compared those documents with an authentic copy the plaintiff later received from Dr. Hayden. Having failed to retain copies, Rule 26(g)(1) imposed a duty to make a reasonable inquiry to determine whether his prior production included authentic documents, or falsified ones. *See* FED. R. CIV. P. 26(g)(1). Mr. Jordan did not satisfy his duty to make a reasonable inquiry, nor did he satisfy his duty to correct the prior production.

"The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." FED. R. CIV. P. 26, Advisory Committee Note, 1983 Amendment. Even if Mr. Jordan could plausibly claim that he did not have any reason to question the accuracy of the treatment records being produced to BAE on May 14, the circumstances were different when Mr. Jordan sent Ms. Johnson's treatment records to BAE on June 24. On June 14, although Ms. Johnson claimed that she was uncertain whether she provided Dr. Siebert with a falsified copy, she did confess to Mr. Jordan that she had falsified some treatment records with Dr. Hayden. Yet far from making a

reasonable inquiry as to whether those falsified documents had actually been produced, Mr.

Jordan continued to isolate himself from the discovery process; he instructed Ms. Johnson to

obtain the original medical records from Dr. Hayden, which Mr. Jordan then forwarded to BAE.

Pl.'s Opp. at 5–6; Pl.'s Opp. App. A. In fact, Mr. Jordan's Memo to File dated June 14, 2013,

which was attached as Appendix A to the plaintiff's opposition, indicates that Mr. Jordan

believed that Ms. Johnson likely gave Dr. Siebert a falsified copy on May 15: "When she met

with Dr. Seibert, she believes that she gave him the original, not the edited version, not matter

[sic] how embarrassing and hurtful, but is fearful that she may have given him her edited copy.

*She cannot find the original records so it is likely that is what happened*, but she is not certain."

Pl.'s Opp. App. A (emphasis added). In light of Ms. Johnson confessing to falsifying her

treatment records and Mr. Jordan having reason to believe Dr. Siebert possessed a falsified copy,

the Court finds Mr. Jordan's failure to inquire *unreasonable*.[7] Furthermore, the Court finds that

Ms. Johnson's representations to her counsel and to the Court at the sanctions hearing that she

---

[7] The following exchange between the Court and Mr. Jordan regarding the June 24 disclosure of Ms. Johnson's treatment records is illustrative of the Court's frustration with Mr. Jordan's continued passive involvement in the discovery process *after* being put on notice that the plaintiff may have submitted falsified treatment records to BAE:

The Court: How did you make sure they were the original records?
Mr. Jordan: Because I told her to get them, tell Dr. Hayden what she had done, and get them to me, and I had never seen these records.
The Court: How did you know that she didn't alter them again?
Mr. Jordan: I don't, I don't.
The Court: Then why didn't you get them yourself, then, when you knew that—if you send her to get them that she might alter them, why didn't you send someone there directly to get them from Dr. Hayden.
Mr. Jordan: I should have gone to Alabama and asked him for the records. But when she called me—
The Court: You could have him mail them to you directly.
Sanctions Hr'g Tr. at 13.

was unsure whether she provided Dr. Siebert with an original or falsified copy on May 15 were not credible. A review of Ms. Johnson's deposition testimony demonstrates that she knew that she provided Dr. Siebert with falsified documents. *See* Pl.'s Dep. 257–58 (Defs.' Mot. Ex. J).[8]

The Court also concludes that the June 24 discovery response violated Mr. Jordan's duty to correct under Rule 26(e)(1)(A). The obligation to "timely" supplement and thus correct discovery obligations applies when the "disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A).

The Court concludes that sending a supplemental response approximately a week after learning of the prior deficiency is arguably timely under the circumstances. However, a prior disclosure or response has not been corrected unless and until the "corrective information has … been made known" to the other party. *Id.* Consequently, it is inconceivable why Mr. Jordan believed simply attaching another copy of Ms. Johnson's treatment records to a letter addressing unrelated discovery issues "corrected" the prior disclosure. Sending more documents to BAE— without noting the significance of the second set of documents—is not a "correction" because it failed to make "known" to BAE the "additional or corrective information." *Id.* Indeed, the Court finds, based on BAE's motion and the representations of BAE's counsel at the sanctions hearing, that BAE was unaware of the significance of the June 24 attachment at the time of production. BAE asserted in its motion that, "[a]t first glance, the newly-produced records merely appeared to be an un-redacted copy of the records previously provided to BAE Systems and Dr. Siebert, with the sole addition of a June 18, 2013 treatment record." Defs.' Mot. at 9–10. Because Mr.

---

[8] Q: This document, ma'am, you completely created it yourself, didn't you?
A: Yes, I did.
Q: And you tried to pass it off to Dr. Siebert as having been prepared by Dr. Hayden, right?
A: I gave him the wrong set of documents, and it was wrong.

Jordan's June 24 discovery response did not withdraw the prior May 14 production or otherwise alert BAE that it possessed a falsified, inauthentic copy of Ms. Johnson's treatment records, Mr. Jordan did not fulfill his obligation under Rule 26(e)(1)(A) to correct his prior discovery response.

Mr. Jordan rejoins with the excuse that he did not want to apprise BAE of the "possibility" that Ms. Johnson provided them with falsified records, since he was not certain that falsified records had actually been produced. This excuse simply doesn't cut it. Mr. Jordan should have kept copies of his discovery submissions to BAE, and he should have bates stamped the production. He did neither.[9] If he had performed these basic litigation tasks, he could have compared the treatment records previously sent to BAE with the authentic records. This would have removed all doubt as to whether Ms. Johnson provided Dr. Siebert with falsified records. Or, in light of the fact that Mr. Jordan did not keep bates-stamped copies of the plaintiff's discovery responses, Mr. Jordan could have asked BAE's counsel for a copy of the treatment records that he and the plaintiff initially produced to BAE, and then compare this copy to the authentic records. Again, this course of action would have removed all doubts as to whether Ms. Johnson provided falsified records. Notwithstanding his sloppy practices of May 14, Mr. Jordan could have performed this due diligence. He simply chose not to do so.

In any event, it is not the duty of this Court to provide legal advice to counsel as to how to fulfill his discovery obligations under Rule 26. Whatever method Mr. Jordan chose to fulfill his obligations, he was required—in some form or fashion—to determine whether there were deficiencies in the prior discovery response and, if so, make counsel for the defendants *aware* of

---

[9] Mr. Jordan represented to the Court that, although it is typically his practice to keep copies of discovery submissions that he sends to the other party, he did not do so on this occasion and has not been consistently adhering to this practice during this litigation. *See* Sanctions Hr'g Tr. at 7–8.

these deficiencies. As noted above, if not for their own diligence, the defendants' counsel would not have been aware that Ms. Johnson altered the treatment records initially produced to BAE. Because the plaintiff's supplemental response failed to inform the defendants' counsel that the initial response was deficient and provide them with the corrective information, the supplemental response was deficient as a matter of law.

### D.        Determining the Appropriate Sanctions

The Court finds by clear and convincing evidence that Ms. Johnson produced to BAE a falsified copy of her treatment records with Dr. Hayden. The Court also finds by clear and convincing evidence that Mr. Jordan failed to certify and correct this production. Having made this evidentiary finding, the Court is authorized to impose both penal and issue-related sanctions.

The parties agree that the Court should sanction the plaintiff, but they disagree on the type of sanction the Court should impose. BAE initially requested the following sanctions: (1) "exclusion of all evidence of and damages for Plaintiff's alleged mental health conditions and treatments"; (2) "if summary judgment is denied and a trial conducted, an adverse inference instruction and that BAE Systems' the ability [sic] to cross examine Plaintiff regarding her fraud, destruction and actual mental health status"; and (3) "monetary sanctions, including attorneys' fees." Defs.' Reply at 12–13. At the sanctions hearing, BAE also orally requested the Court to dismiss the plaintiff's complaint. *See* Sanctions Hr'g Tr. at 122–23.

Plaintiff suggests the following sanctions: (1) "[Ms.] Johnson be required to appear for another psychiatric examination by Dr. Siebert, at a time and place of his convenience"; (2) "[Ms.] Johnson be required to reimburse BAE for Dr. Siebert's time and expense incurred in re-examining Johnson"; (3) "Dr. Siebert's medical report not be required until 30 days after his

second evaluation of Johnson has been completed"; (4) "Discovery be extended for 30 days from the date of the entry of the sanction order"; and (5) "[Ms.] Johnson be fined $250.00 for the disruption of the court's scheduling order and hearing docket." Pl.'s Opp. at 11.

For the reasons discussed below, the Court concludes that dismissal and its functional equivalent are not appropriate. Instead, the Court awards BAE attorneys' fees and costs, finds that an adverse inference instruction is appropriate, and imposes additional discovery obligations upon the plaintiff and her counsel.

i.   Dismissal is Not Appropriate

As our Court of Appeals has explained, dismissal or entry of default is inappropriate absent a reasoned explanation why lesser sanctions would not deter and remedy the misconduct. *Shepard*, 62 F.3d at 1478–79. Defendants' counsel requested during the sanctions hearing that the Court should dismiss the plaintiff's complaint. Although the plaintiff's conduct was egregious, the Court believes dismissal is not appropriate.

In support of its request for dismissal, the defendants rely principally upon *Young v. Office of the United States Senate Sergeant at Arms* 217 F.R.D. 61 (D.D.C. 2003).[10] Defendants' pleadings also cite *Slate v. Am. Broadcasting Cos.*, 2013 U.S. Dist. LEXIS 57617 (D.D.C. Apr. 23, 2013). Both cases differ factually from the misconduct in this litigation.

The most significance difference between *Young* and the matter before this Court is that the offending party in *Young* "willfully failed to comply with two separate court orders requiring production of her medical records." *Young*, 217 F.R.D. at 66. In contrast, the instant motion is this Court's initial involvement in the parties' discovery fray. This is not to say that a court's prior involvement in a discovery dispute is required before dismissing a case, but the grave

---

[10] Defendants cited *Young* when orally requesting the Court to dismiss the plaintiff's complaint at the motions hearing.

nature of dismissal dictates that it will often be prudent for a court to put a party on notice before imposing the ultimate sanction of dismissal.

In addition, the court in *Young* found clear and convincing evidence of witness tampering, and also found that the plaintiff "specifically asked [her] psychiatrist *not* to send any of her medical records to her lawyers." *Id.* (emphasis in original). Here, in contrast, Ms. Johnson has not instructed Dr. Hayden, her primary physician, not to send any of her medical records to her counsel, Mr. Jordan. Nor have the defendants claimed that Ms. Johnson tampered with any witnesses or instructed Dr. Hayden, or any other physician, to disregard the defendants' subpoenas.

The misconduct at issue here also differs from the misconduct in *Slate*. Although it is true that the court in *Slate* stated that "fabrication" of evidence "could very well … qualify as a basis, in and of itself, to dismiss this case," *Slate*, 2013 U.S. Dist. LEXIS 57617, at *61, the court identified several other instances of misconduct that supported the court's decision to dismiss the plaintiff's suit. For example, the court stated that "the plaintiff has made numerous representations to the Court that are diametrically at odds with the documentary evidence present in the record." *Slate*, 2013 U.S. Dist. LEXIS 57617, at *65. The court also cited a "course of conduct" that "includes, but is not limited to: (1) attempting to fraudulently collect evidence; (2) producing discovery documents in a soiled envelope that had the strong odor of excrement; (3) improperly videotaping his own deposition testimony; and (4) producing voluminous amounts of irrelevant and misleading materials." *Slate*, 2013 U.S. Dist. LEXIS 57617, at *67–68.

In this litigation, as discussed above, the Court does find that some of Ms. Johnson's representations during the sanctions hearing were not credible; however, the Court has not concluded that Ms. Johnson made repeated misrepresentations to this Court throughout this

litigation. Furthermore, this discovery misconduct here has not involved the kind of "course of conduct" that was present in *Slate*.

Moreover, the court's reasons in *Slate* for declining to impose lesser sanctions are also significant. Among these reasons, the court concluded that "the fact that the plaintiff is proceeding *pro se* is a strong indication that he would be unwilling or unable to pay any monetary sanctions leveled against him, and of course he cannot be punished with a suspension or revocation of his license to practice because he has none. Thus, such sanctions are unlikely to be effective in adequately deterring and punishing the plaintiff's misconduct." *Slate*, 2013 U.S. Dist. LEXIS 57617, at *75. The Court also notes that the plaintiff in *Young* had been proceeding *pro se* after her lawyers withdrew from the case. *See Young*, 217 F.R.D. at 64. Here, Ms. Johnson is not proceeding *pro se*, and the Court finds that a combination of sanctions will sufficiently deter and punish her misconduct.

The Court finds that the discovery misconduct in *Richardson v. Union Oil Co. of California*, 167 F.R.D. 1 (D.D.C. 1996), is more analogous to the discovery misconduct here. In *Union Oil* the plaintiff claimed that her husband's death was caused by exposure to chemicals contained in products produced by Defendant Union Oil. *Id.* at 1–2. Thus, a central issue was whether the products contained a sufficient quantity of the chemical benzene to have caused his death. *See id.* In response to the plaintiff's discovery requests, the defendant—on two separate occasions—"deleted all references to [test results at one of the defendant's refineries] and removed a document heading entitled 'Volume Percent' at the top of the document which would have alerted any knowledgeable reader that the document had been redacted." *See id.* at 2. As a result, the defendant's discovery misconduct would have deprived the plaintiff of information critical to establishing the causal connection between her husband's death and the defendant's

products, and the plaintiff likely would not have been able to establish liability through other evidence. *See id.* at 5 ("While Plaintiff is correct that her case would have been seriously (if not fatally) weakened by the incomplete and inaccurate data submitted by Defendant, the fact is that that did not happen, and therefore Plaintiff was not harmed."). The court awarded attorneys' fees and expenses, precluded the defendant from presenting "any evidence or argument that there was insufficient benzene in [its product]" to cause the disease that the plaintiff alleges resulted in her husband's death, and permitted the plaintiff to present evidence "relating to the Defendant's document alteration and misrepresentations to the Court." *See id.*

Defendants attempt to distinguish *Union Oil* by arguing that here, "[Ms.] Johnson has not only altered documents, she has destroyed them, repeatedly lied, and obstructed BAE Systems' ability to learn what should have been basic and immediately provided information." Defs.' Reply at 13. Defendants fail to appreciate that this is the type of misconduct that was present in *Union Oil*. Furthermore, to the extent the defendants' claim that Ms. Johnson "destroyed" documents suggests that the defendants will forever be without information that was once available, they overstate the prejudice they have suffered. Defendants correctly state that the record indicates Ms. Johnson believed, inexplicably, she possessed the only copies of her treatment records with Dr. Hayden and, consequently, believed "destroying" her copy removed all traces of this evidence. Despite Ms. Johnson's intent, however, the original medical records were still available and the defendants have in fact received a copy of these records. Ms. Johnson's intent, though reprehensible, is not a sufficient basis to impose dismissal as a sanction for misconduct that warrants lesser, though sufficiently severe, sanctions.

Furthermore, in *Union Oil*, as here, counsel "learned of the discovery misconduct and obtained the accurate data well in advance of trial," and therefore their "ability to present her full

case to the jury was not compromised in any way." *Union Oil*, 167 F.R.D. at 5. The *Union Oil* court also acknowledged that the plaintiff's case "would have been seriously (if not fatally) weakened" absent their diligence, but concluded that her counsel's diligence prevented this from occurring. The diligence of BAE's counsel also prevented the same prejudice here.

Finally, dismissal is not warranted for another reason. After " 'calibrat[ing] the scales' " to determine whether the severely penal nature of dismissal "corresponds to [Ms. Johnson's] misconduct," as required by our Court of Appeals, *see Shepard*, 62 F.3d at 1479, the Court concludes that it does not. Plaintiff's misconduct, though egregious, contaminates only the facts in support of her damages claim. As BAE concedes, "[Plaintiff's] discovery abuses and lies do not directly pertain to the issue of liability." Pl.'s Mot. at 21. Thus, at this stage of the litigation, the plaintiff's discovery misconduct has not tainted her theory of liability, and therefore dismissal of her case is not commensurate with her misconduct.

ii.    Excluding Emotional Damages Evidence is Not Appropriate

Defendants ask this Court to impose the "issue-related" sanction of "exclusion of all evidence of and damages for Plaintiff's alleged mental health conditions and treatments." Defs.' Reply at 12–13. The Court finds that this sanction is the functional equivalent to dismissal because the damages element of the plaintiff's remaining claims depends almost exclusively on the jury finding that the plaintiff suffered emotional harm. For the reasons discussed above, however, dismissal is inappropriate.

The Court appreciates the defendants' concern that the plaintiff cannot be trusted to produce all responsive documents and identify information regarding her prior medical history. *See* Defs.' Mot. at 22–23. The Court finds that the plaintiff has been evasive, manipulative, and hardly credible during the sanctions hearing before this Court. Nevertheless, the Court concludes

that the appropriate sanction is to inform the jury, through an adverse inference instruction, of the plaintiff's manipulation of the evidence. Furthermore, the defendants do not have to rely on the plaintiff's representations and discovery responses to reconstruct her medical history. They can continue to subpoena and thus rely on third parties, which in turn should lead to additional and complete information about the plaintiff's medical history.

iii.   <u>Appropriate Sanctions and Orders</u>

(1) The Court admonishes Plaintiff and her counsel that any further incomplete or misleading discovery responses will result in severe sanctions, including potentially dismissal of her claims and referral to disciplinary authorities.

(2) The Court ORDERS that BAE is entitled to an adverse inference instruction. A sample instruction is attached to this Memorandum Opinion and Order.

(3) The Court ORDERS that Mr. Jordan is to (i) completely manage and control further document production and conduct all communications with any third parties regarding discovery and (ii) directly retrieve all documents from third parties in the future. Further, the Court ORDERS that Mr. Jordan is to perform both obligations without using Ms. Johnson as an intermediary.

(4) The Court ORDERS that Defendants are entitled to **<u>all</u>** their attorneys' fees for time specifically spent investigating the fraudulent documents provided by Plaintiff to Dr. Siebert from May 15, 2013 up until July 11, 2013. Further ORDERED that from July 12, 2013 to July 15, 2013, the three days of Plaintiff's deposition, Defendants are entitled to **<u>10%</u>** of their attorneys' fees. The Court concludes that approximately 10% of Plaintiff's deposition was devoted to questioning Plaintiff regarding the fabricated evidence. The allocation for payment of the attorneys' fees is as follows:

- From May 15 to June 14, Ms. Johnson is ORDERED to pay 100% of the fees.

- From June 15 to July 11, Ms. Johnson is ORDERED to pay 75% of the attorneys' fees and Mr. Jordan is ORDERED to pay 25% of the attorneys' fees. Mr. Jordan is ORDERED to pay 25% because of his failure to correct the false and misleading production.

- From July 12 to July 15, of the 10% of attorneys' fees to which the defendants are entitled, Ms. Johnson is ORDERED to pay 75% of the attorneys' fees and Mr. Jordan is ORDERED to pay 25% of the attorneys' fees. Mr. Jordan is ORDERED to pay 25% because of his failure to correct the false and misleading production.

(5) ORDERED that Defendants are entitled to recoup Dr. Siebert's fee for the time spent examining Plaintiff on May 15. Ms. Johnson is ORDERED to pay 100% of the fees.

(6) ORDERED that Defendants are to craft an interrogatory and document request regarding Ms. Johnson's past mental health history and medications. Plaintiff's interrogatory response must be signed by Ms. Johnson, and Mr. Jordan must prepare and sign the response to the document request. Mr. Jordan must submit his response to the document request in a format substantially similar[11] to that in Bender's Federal Practice Form No. 34:10, *see* 8 MATTHEW BENDER, BENDER'S FEDERAL PRACTICE FORMS, Form No. 34:10 (2013)[12], and he must bates stamp all documents produced henceforth and include the bates numbers in the signed response.

The Court further ORDERS that the responses to the interrogatory and the document request shall include ***all*** responsive documents, regardless of whether Plaintiff has previously produced the document. Further, the Plaintiff is ORDERED to identify the documents that were

---

[11] Bender's Form 34:10 does not expressly require bates numbers, but Mr. Jordan must include bates numbers in his response.
[12] Bender's Federal Practice Forms are available in the District of Columbia Circuit Court Library and through LexisNexis.

not previously produced; if Plaintiff is uncertain whether a document has been previously produced, she should inform the defendants.

Further ORDERED that the parties meet and confer in an attempt to determine the amount of attorneys' fees owed by Ms. Johnson and Mr. Jordan. If the parties are unable to resolve the issue, by no later than December 13, 2013, BAE shall prepare and file a report detailing the relevant attorneys' fees, and the Court will determine the appropriate amount of attorneys' fees. The parties shall thereafter appear for a hearing on December 20, 2013, at 9:30 A.M. to set dates for a Pretrial Conference and for trial.

SO ORDERED.

### III. CONCLUSION

For the foregoing reasons, BAE's Motion for Sanctions is **GRANTED IN PART** and **DENIED IN PART**.

SO ORDERED.

Date: November 27, 2013

                                       _____
ROBERT L. WILKINS
United States District Judge

**Court's Proposed Adverse Inference Instruction**

Evidence has been presented during the trial indicating that the Plaintiff falsified some of her medical records during the discovery period leading up to this trial, and that she provided these falsified records to the Defendant's expert witness, Dr. Seibert, during his examination of her prior to this trial. In addition, evidence has been introduced indicating that the Plaintiff provided false or misleading information about her medical and mental health history to Dr. Seibert during his examination of her prior to trial, and that the Plaintiff provided false or misleading testimony when questioned under oath about these matters prior to this trial. To the extent that any of these matters are in dispute, it is your duty to find where the truth lies.

As a result, I instruct you that you may, but are not required, to find that: 1) the Plaintiff has failed to fully and completely disclose her medical and mental health history to the Defendant, and 2) if the Plaintiff has failed to make such a full and complete disclosure, that the Defendant could have found more evidence that would have been unfavorable to the Plaintiff about her medical and mental health history. Furthermore, if you find by clear and convincing evidence that the Plaintiff provided false testimony, while under oath, about her medical and mental health history prior to this trial, then I instruct you that the Plaintiff's testimony about those matters during this trial should be considered with caution and scrutinized with care.

*See Stender v. Vincent*, 92 Haw. 355, 992 P.2d 50 (2000); D.C. Std. Civ. Jury Instr. No. 3–6; D.C. Std. Crim. Jury Instr. No. 2.206.